**Dayton Duane EVANS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 45S00–9809–CR–00508.

Supreme Court of Indiana.

May 4, 2000.

1074

Mark A. Bates, Appellate Public Defender, Lake Superior Court, Crown Point, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Dayton Duane Evans was convicted of attempted murder and murder after attacking his ex-girlfriend and killing her new boyfriend. He appeals claiming the State failed to disprove that he killed in "sudden heat," and there was insufficient evidence to support his attempted murder conviction. He also challenges several rulings by the trial court and the severity of his sentence. Finding the evidence sufficient to support his convictions, the trial court's rulings otherwise proper, and the sentence within the trial court's discretion, we affirm.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict reveal that on June 24, 1995, Marianne Allen and her new boyfriend, James Harris, were lying together in bed in Marianne's home. They awoke to find Marianne's ex-boyfriend, Defendant Dayton Duane Evans,[1] standing over them with a knife in each hand, asking, "Is that the reason you won't take me back?" When Defendant moved towards Marianne with a stabbing motion, Harris reacted by throwing a comforter over her. A melee then ensued between Defendant and Harris, eventually spilling out of the bedroom, into the hallway, and ending downstairs with Defendant inflicting multiple stab wounds on Harris, ultimately killing him.

---

1. Marianne had just ended her longstanding relationship with Defendant, who fathered one of her three children.

On July 15, 1998, a jury found Defendant guilty of Murder,[2] and attempted Murder,[3] a Class A felony. The trial court imposed a 60–year sentence for murder and a 40–year sentence for attempted murder, with each sentence to run concurrently.

We will recite additional facts as needed.

## I

Defendant first contends that the State failed in its burden of negating beyond a reasonable doubt his claim that he was acting under sudden heat when he killed Harris, thereby entitling him to a reversal of his murder conviction.

■■■ Voluntary manslaughter is a lesser included offense of murder, distinguishable by the factor of a defendant having killed, while acting under sudden heat. Ind.Code § 35–42–1–3 (1993). To establish sudden heat, the defendant must show "sufficient provocation to engender ... passion." *Johnson v. State,* 518 N.E.2d 1073, 1077 (Ind.1988). Sufficient provocation is demonstrated by "such emotions as anger, rage, sudden resentment, or terror [that are] sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Id.*

■■■ To obtain a conviction for murder, the State is not required to negate the presence of sudden heat because "[t]here is no implied element of the absence of sudden heat in the crime of murder." *Earl v. State,* 715 N.E.2d 1265, 1267 (Ind. 1999). However, once a defendant places sudden heat into issue, the State then bears the burden of negating the presence of sudden heat beyond a reasonable doubt. *McBroom v. State,* 530 N.E.2d 725, 728

(Ind.1988). It may meet this burden by rebutting the defendant's evidence or affirmatively showing in its case-in-chief that the defendant was not acting in sudden heat when the killing occurred. *See Earl,* 715 N.E.2d at 1267–68; *Gregory v. State,* 540 N.E.2d 585, 593 (Ind.1989).

■■■ Defendant claims that "a sudden rage came over him" in that he "snapped after witnessing Marianne and Harris having sexual intercourse." He alleges that his actions were the result of him "experiencing the whole relationship, anger, the whole five years, everything." Given Defendant's recent prior live-in relationship with Marianne and the fact that he fathered one of her children, we agree that this evidence adequately introduced the element of sudden heat. However, we find that the totality of the evidence presented in this case is sufficient to support the court's conclusion that Defendant did not act in sudden heat.

The State directs us to Defendant's own testimony where he detailed the events that took place on the night of the murder: After ascending the stairs and realizing that Marianne was with someone in the upstairs bedroom, Defendant went downstairs to arm himself with knives. He then cut the telephone lines before going back upstairs, standing outside the bedroom for a "minute, minute and a half."[4] Next, he entered the bedroom and engaged Marianne and Harris in a short conversation before the melee ensued. The two men soon spilled out in the hallway with Defendant "jump[ing] over the railing of the staircase ... [and] over the couch" to pursue Harris as he attempted to "get out" of the house, ultimately stopping Harris for the fatal fight at the front door.

**2.** Ind.Code § 35–42–1–1 (1993).

**3.** *Id.* §§ 35–42–1–1 and 35–41–5–1.

**4.** Under cross-examination, Defendant admitted cutting the phone lines after hearing "music" and "groaning" from the bedroom. He

then stated that since "[Marianne] had called the police in the past" during their arguments, he just wanted "time to get away without her and her lover calling the police" in the event that "anything happened."

We find the evidence sufficient to conclude that the State negated Defendant's claim of "sudden heat" beyond a reasonable doubt. There is ample evidence to show that Defendant acted with the premeditation and deliberation sufficient to support the jury's verdict of murder, rather than voluntary manslaughter. *See, e.g., Ellis v. State*, 508 N.E.2d 790, 791 (Ind. 1987) (affirming a jury verdict rejecting a claim of sudden heat where the victim "stopped fighting and attempted to flee" the fight scene).

## II

Defendant next contends that the evidence adduced at trial was insufficient to establish that he took a substantial step towards killing Marianne, thereby entitling him to a reversal of his attempted murder conviction. Specifically, he claims that since a comforter covered Marianne's face, she could not testify as to how close the knife came to her. Appellant's Br. at 10.

■■■ In reviewing sufficiency claims, we neither reweigh the evidence nor judge the credibility of the witnesses. We only consider the evidence favorable to the jury's verdict, together with all reasonable inferences to be drawn therefrom. *Allen v. State*, 575 N.E.2d 615, 616 (Ind.1991). If there is substantial evidence of probative value to support the conclusion of the jury, we will affirm the judgment. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998).

■■■ To convict a defendant of attempted murder, the State must prove beyond a reasonable doubt that the defendant possessed the intent to kill while taking a substantial step toward the crime of murder. Ind.Code §§ 35–41–5–1(a) and 35–42–1–1 (1993); *Greenlee v. State*, 655 N.E.2d 488, 492 (Ind.1995). " 'Intent may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm.' " *Mitchem v. State*, 685 N.E.2d 671, 676 (Ind.1997) (quoting

*Johnson v. State*, 455 N.E.2d 932, 936 (Ind. 1983)).

■■■ At trial, Marianne testified that she woke up and saw Defendant "standing over [her], maybe two feet away ... with [a] knife in each hand." She then testified that both she and Harris jumped back against the bedroom wall. At that point, Defendant asked Marianne if the man in bed with her was "the reason [why she] wouldn't take him back." Apparently not satisfied with her "no" answer, Defendant then announced, "[W]ell, we're all going to die tonight." And according to Marianne, "That's when [Defendant] went to stab me," so that Harris "grabbed [the] comforter that was on [the] bed and threw it over" her in an effort to frustrate Defendant's attack.

We find there was sufficient evidence from which a jury could reasonably have inferred that Defendant acted with the requisite intent to kill Marianne with the knife and that his actions in the bedroom constituted a substantial step towards the crime of killing her.

## III

### A

Defendant next contends that the trial court committed reversible error in admitting testimony of a prior bad act by Defendant in violation of Indiana Evidence Rules 404(b) and 403. Prior to trial, Defendant sought and was granted a motion *in limine* barring the State from introducing evidence that Defendant had choked Marianne two days prior to Harris's murder.

During the course of Marianne's cross-examination, defense counsel attempted to elicit her testimony that Harris was a "dangerous person," who was the initial aggressor in the fatal encounter with Defendant. (R. at 147; "So, it's just as possible that James Harris struck out at [Defendant] as vis[a] versa, is it not?").

Before beginning her redirect of Marianne, the deputy prosecutor approached

the bench with defense counsel and announced at sidebar that the "choking incident that happened on the 22nd I think is now fair game." Her basis for this statement was that "[D]efendant is now alleging self-defense, although it was not listed as a defense." The deputy prosecutor pointed out that the evidence had "entered the specter that somehow James Harris was the aggressor and ... a dangerous person."

Defense counsel objected to this rationale, claiming, "There's no evidence to show that [Defendant] had any kind of disagreement with James Harris prior to this." Nevertheless, defense counsel did confirm to the trial court that he was "going to raise self-defense" in presenting the remainder of his case.

## B

The State's position is that the evidence of uncharged misconduct was properly admitted under the "intent" exception to Indiana Evidence Rule 404(b) which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (emphasis added).

 When the State attempts to introduce evidence of a defendant's uncharged misconduct, the trial court must perform a two-part inquiry: first, the court must determine whether "the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act." *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). If the evidence is offered only to produce the "forbidden inference," that is,

that the defendant had engaged in other, uncharged misconduct and that the charged conduct was in conformity with the uncharged misconduct, then the evidence is inadmissible. *Id.* at 219; *see also Poindexter v. State*, 664 N.E.2d 398, 400 (Ind.Ct.App.1996).

 The second part of the two-part inquiry involves the trial court "balanc[ing] the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Hicks*, 690 N.E.2d at 221 & n.10.[5] The trial court has wide latitude, however, in weighing the probative value of the evidence against the possible prejudice of its admission, and its ruling will be reviewed only for an abuse of discretion. *Poindexter*, 664 N.E.2d at 400.

## C

In *Wickizer v. State*, 626 N.E.2d 795 (Ind.1993), this Court examined the "intent" exception to Evid. R. 404(b). At issue in *Wickizer* was the admissibility of the testimony of two adult witnesses concerning the defendant's prior sexual conduct with them as male youths. *Id.* at 796.

We noted that "intent" – the defendant's culpability – is a matter to be proven in virtually every criminal prosecution, so that "applying a broad construction to the intent exception of Rule 404(b)" might cause it "to overwhelm the rule's primary objective of prohibiting [impermissible character] evidence of other crimes, wrongs, or acts." *Id.* at 797. However, we then noted that the intent exception to Rule 404(b) would

> be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening

**5.** While "prejudice" is the primary countervailing factor under Rule 403, other factors are listed therein: confusion of the issues, misleading the jury, undue delay, and the needless presentation of cumulative evidence.

Defendant's claim in this case is solely based on the unfair prejudice that resulted when the jury was exposed to the evidence of his prior altercation with Marianne.

statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense.

*Id.* at 799. We ultimately reversed the defendant's child molestation conviction, finding that his pre-trial assertion to police that he was not a "devious character" was insufficient to establish the requisite "claim of particularly contrary intent." *Id.* at 800.

■■■ In the present case, Defendant went beyond merely denying the charged culpability and affirmatively presented a claim of particular contrary intent – self defense [6] – during his cross-examination of Marianne. Here, the evidence of Defendant's prior bad act was that he recently fought with and choked Marianne after she insisted on ending their relationship.

At first blush, this evidence of Defendant's prior bad act *against Marianne* may seem irrelevant in rebutting Defendant's assertion of self-defense *against Harris.* However, this evidence was particularly relevant and probative in aiding the jury's decision with regards to Defendant's alleged murder of Harris. First, it directly rebutted Defendant's claim that Harris was the dangerous aggressor and tended to show that Defendant initiated their fatal fight after he saw Harris in bed with Marianne and asked, "Is he the reason why you won't take me back?" Second, this evidence of Defendant's prior misconduct was close enough in time (approximately 48 hours) to be genuinely relevant in showing Defendant's intent at the time of the murder. *See Hicks,* 690 N.E.2d at 220 (A trial court's discretion in admitting evidence of the defendant's prior bad acts "includes determining the signifi-

cance of the similarity or remoteness of evidence.") (citing *Fisher v. State,* 641 N.E.2d 105 (Ind.Ct.App.1994)).

This evidence was also relevant and probative in that it directly involved and shed light on Defendant's relationship with Marianne, whom the jury considered as Defendant's second alleged victim in deciding the State's attempted murder charge. *See Ross v. State,* 676 N.E.2d 339, 346 (Ind.1996) ("[A] defendant's prior bad acts are ... usually admissible to show the relationship between the defendant and the victim.").

Under these circumstances, we conclude that the probative value of this evidence substantially outweighed any danger of unfair prejudice. Therefore, the trial court did not abuse its discretion in permitting the State to introduce evidence of this recent, uncharged prior altercation under the intent exception to Evidence Rule 404(b).

## IV

### A

Defendant also contends that the trial court committed reversible error in not instructing the jury on the lesser included offenses of involuntary manslaughter and reckless homicide.[7]

■■■ In *Wright v. State,* 658 N.E.2d 563 (Ind.1995), this Court set forth a three-part test for determining when a trial court should instruct on a lesser included offense. Part one requires the trial court to determine whether the lesser offense is "inherently" included in the offense charged by comparing the statute defining the crime charged with the statute defining the alleged lesser included offense. *Id.* at 566–67; *see also Wilson v. State,* 697 N.E.2d 466, 473 (Ind.1998). If necessary, part two of the *Wright* test alternatively

---

6. He vigorously maintained this defense throughout the trial, including during his own testimony and closing argument.

7. The trial court did instruct the jury on the lesser included offense of voluntary manslaughter.

requires the trial court to determine whether the lesser offense is "factually" included in the offense charged by comparing the charging instrument with the statute defining the alleged lesser included offense. *Wright*, 658 N.E.2d at 567.

■ Finally, if the court concludes that the lesser offense is either inherently or factually included in the offense charged, then part three requires the court to determine whether a serious evidentiary dispute exists as to which offense was committed by the defendant, given all the evidence presented by both parties. *Id.* If a serious evidentiary dispute does exist, it is reversible error not to give the instruction on the inherently or factually included lesser offense. *Id.*

■ In this case, the trial court held a hearing on Defendant's tendered instructions after the close of evidence and before closing arguments began. During this hearing, Defendant argued that he was entitled to the lesser included instructions given the evidence adduced at trial. The record indicates that the trial court then performed the type of factual analysis contemplated by *Wright* and *Wilson* to determine that no serious evidentiary dispute existed warranting the lesser included offense instructions on involuntary manslaughter and reckless homicide. Because it is apparent that the trial court refused the instructions on these grounds, as opposed to "reject[ing] the tendered instructions on the basis of its view of the law," we review its ruling only for an abuse of discretion. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998) (establishing an "abuse of discretion" standard of review if the trial court performed a factual analysis and a "de novo" standard of review if the trial court performed a legal analysis).

## B–1

■ Involuntary manslaughter *is not* an inherently included lesser offense of murder. *Wright*, 658 N.E.2d at 569; *see also Champlain v. State*, 681 N.E.2d 696,

702 (Ind.1997) (comparing Ind.Code § 35–42–1–1 (1993), with *id.* § 35–42–1–4). But it is a "factually included" lesser offense if the charging instrument alleges that a battery accomplished the killing. *Wright*, 658 N.E.2d at 569–70. Battery is a knowing or intentional touching of another person in a rude, insolent, or angry manner. Ind. Code § 35–42–2–1 (1993). Here, the information alleged that "Dayton Duane Evans did knowingly or intentionally kill James Harris by means of a knife, a deadly weapon . . . ." (R. at 6.) Killing an individual with a knife is necessarily accomplished by touching someone in a rude, insolent, or angry manner. *See McEwen v. State*, 695 N.E.2d 79, 86–87 (Ind.1998). As such, we find that the information did assert a battery, and involuntary manslaughter was a factually included lesser offense of murder. Thus, we turn to the final step of the *Wright* analysis.

■ The critical element distinguishing involuntary manslaughter from murder in this case is intent – the intent to kill or the intent to batter. And the record before us reveals no serious evidentiary dispute concerning whether Defendant intended to kill or batter Harris. To begin with, there is no evidence – or claim by Defendant – that Defendant intended only to batter Harris. *Cf. Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991) (ordering a new trial where the evidence included the defendant's "testimony that his intent was only to injure his father," thus entitling him to an instruction on involuntary manslaughter).

In regard to Defendant's intent to kill, after the close of evidence, the trial judge questioned whether "involuntary manslaughter [was] still appropriate" given Defendant's "professed intent to kill" while proclaiming, "We're all going to die here today." In ultimately rejecting the instruction on involuntary manslaughter, the trial court stated that this professed intent to kill "excludes any arguable grounds to suggest that he didn't have an intent to kill." We agree with the trial court and would also point to Defendant's violent

pursuit of Harris throughout the house with Defendant ultimately inflicting multiple stab wounds on Harris, including slitting his throat. The trial court did not abuse its discretion in refusing to give the instruction.

### B–2

■ Defendant also tendered an instruction on reckless homicide, Ind.Code § 35–42–1–5 (1993), which the trial court refused. The only distinguishing feature in the elements of murder and reckless homicide is the mens rea required of each offense. *Wright*, 658 N.E.2d at 567. Reckless homicide *is* an inherently included offense of murder, *id.*, thus, we proceed directly to step three of the *Wright* analysis.

■ Following a similar analysis as presented above, we again note that the record reveals no serious evidentiary dispute concerning the mens rea element. Therefore, we agree with the trial court when it ruled that Defendant's professed intent to kill "excludes any arguable grounds to suggest that he didn't have an intent to kill," and thus "[r]eckless [was] out too." The trial court did not abuse its discretion in refusing to give the instruction.

### V

Finally, Defendant contends that his enhanced sentence of 60 years for murder, to be served concurrently with his 40–year sentence for attempted murder, was manifestly unreasonable in that the trial court failed to consider Defendant's remorse as a mitigating factor in its sentencing order.

■ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or re-

duce the sentence to reflect mitigating circumstances. When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind. 1996)).

■ At the time Defendant committed these crimes, murder carried a presumptive 50–year sentence, with not more than ten years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. *See* Ind.Code § 35–50–2–3 (Supp.1995). The trial court sentenced Defendant to an enhanced term of 60 years and listed no significant mitigating factors in its sentencing order.[8] The trial court did identify several significant aggravating circumstances to include: (1) Defendant stabbing his ex-girlfriend's new boyfriend to death; (2) Defendant trying to stab his ex-girlfriend; (3) Defendant's prior criminal history, including a misdemeanor battery conviction, and convictions for and pending charges concerning his status as a habitual traffic offender; (4) the risk that Defendant would commit future crimes; and (5)

---

**8.** The crime in this case was committed at a time when the presumptive sentence for murder was 50 years and the maximum was 60 years. Ind.Code § 35–50–2–3 (Supp.1995) (as amended by P.L. 2–1995, sec. 128). As such, the sentence imposed was authorized by the statute in effect at the time.

the fact that Defendant's "prior lenient treatment has had no deterrent effect."

█ It is within the sentencing court's discretion to determine whether remorse should be considered as a "significant" mitigating factor. *Battles v. State,* 688 N.E.2d 1230, 1237 (Ind.1997); *see also Jones v. State,* 698 N.E.2d 289, 291 (Ind. 1998) ("What constitutes a 'significant' mitigating factor is generally within the discretion of the trial court."); *Ross v. State,* 676 N.E.2d 339, 347 (Ind.1996) (stating that "the 'proper' weight to be afforded by the trial court to the mitigating factors may be to give them no weight at all").

In light of the extremely brutal nature of Harris's death, we find no abuse of the trial court's sentencing discretion in choosing not to assign any significant weight to Defendant's claim of remorse. Furthermore, we find that any weight that might have been assigned to this proffered mitigating circumstance is more than offset by Defendant's prior criminal history and the trial court's decision to impose concurrent – in lieu of consecutive – sentences for Defendant's murder and attempted murder convictions. As such, we conclude that the sentence was not manifestly unreasonable.

*Conclusion*

The trial court is affirmed in all respects.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.