Greg Allen ERLEWEIN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 16A01–0201–CR–19.

Court of Appeals of Indiana.

Sept. 30, 2002.

Susan Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Greg Erlewein appeals his conviction for murder. We affirm.

### Issue

The sole issue before us is whether the trial court erroneously refused to give Erlewein's tendered involuntary manslaughter instruction to the jury.

### Facts

In the early morning hours of January 4, 2001, Erlewein waited up for his wife, A.E., to return from work. Erlewein and A.E. had been having marital difficulties, and A.E. had moved back in with Erlewein in December after living elsewhere for several months. Erlewein expected A.E. to be home around 12:30 a.m., but she did not return until approximately 2:30 a.m. When Erlewein began questioning A.E. on her whereabouts, she soon stated that she would have to move out again because she was eight or nine weeks pregnant with another man's child. Erlewein tried to persuade A.E. not to move out, but A.E. refused to change her mind.

Around 4:00 a.m., Erlewein began beating A.E. with sufficient force to knock out her partial dental plate and to leave numerous contusions on her head and body. A.E. did not struggle with Erlewein, but pleaded with him that she was sorry and that she loved him. Eventually, Erlewein got behind A.E., placed his right arm around her neck, and choked her until she died. He made no effort to resuscitate her or contact emergency medical personnel. Erlewein called his mother-in-law, his pastor, and his own mother, who came to retrieve Erlewein's children, before he called 911 at approximately 6:00 a.m. to report that he had killed A.E.

The State charged Erlewein with murder.[1] At a jury trial conducted on October 23 and 24, 2001, Erlewein testified to the events described above, but also asserted that he did not knowingly or intentionally kill A.E. Erlewein tendered an instruction on involuntary manslaughter, but the trial court refused to give it to the jury, finding there was no serious evidentiary dispute that Erlewein intended to kill A.E. rather than merely batter her. The jury found Erlewein guilty as charged, and he now appeals.

### Analysis

Erlewein contends the trial court erred in not giving an instruction on invol-

---

1. The State also originally charged Erlewein with voluntary manslaughter. That charge was later dismissed, and the trial court refused to give Erlewein's voluntary manslaughter instruction to the jury; Erlewein does not challenge that refusal.

untary manslaughter to the jury because it was a lesser included offense of murder. When called upon by a party to instruct a jury on a lesser included offense of the crime charged, a trial court must perform a three-step analysis. First, it must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. *Wright v. State*, 658 N.E.2d 563, 566 (Ind. 1995). Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. *Id.* at 567. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* It is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense if there is such an evidentiary dispute. *Id.* "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id.*

■ "Involuntary manslaughter is not an inherently included lesser offense of murder." *Evans v. State*, 727 N.E.2d 1072, 1081 (Ind.2000). "But it is a 'factually included' lesser offense if the charging instrument alleges that a battery accomplished the killing." *Id.* Here, the State

does not challenge Erlewein's assertion that involuntary manslaughter was factually included in the murder charge against him because the information alleged that he killed A.E. by battering her, i.e. knowingly or intentionally touching A.E. in a rude, insolent, or angry manner. *See* Ind. Code § 35–42–2–1(a). Instead, the State focuses its argument on whether there was a serious evidentiary dispute regarding the element distinguishing involuntary manslaughter from murder. "The critical element distinguishing involuntary manslaughter from murder in this case is intent—the intent to kill or the intent to batter." *See Evans*, 727 N.E.2d at 1081.

■ We note that in deference to the trial court's proximity to the evidence, we review a decision whether to instruct the jury on lesser included offenses for an abuse of discretion if the court makes a finding as to the existence or lack of a "serious evidentiary dispute." *McEwen v. State*, 695 N.E.2d 79, 84 (Ind.1998). Here, the trial court specifically noted on the record:

> I don't believe there is any serious dispute in the evidence of what the Defendant intended. That is whether to kill or to batter. The prolonged strangulation of the victim I believe is conclusive that the intention was to kill rather than simply to batter. For those reasons the Court is not instructing on Involuntary Manslaughter.

Tr. p. 518. Because of this explicit finding of no serious evidentiary dispute, we will review the trial court's refusal to give an involuntary manslaughter instruction for an abuse of discretion.

Involuntary manslaughter occurs if a person kills another human being while committing or attempting to commit battery. I.C. § 35–42–1–4(b)(3). Murder requires at the minimum a killing committed by a perpetrator who engaged in the kill-

ing with an awareness of a high probability that he was doing so. *Heavrin v. State,* 675 N.E.2d 1075, 1078 (Ind.1996); I.C. §§ 35–42–1–1(1) and 35–41–2–2(b). In *Heavrin,* our supreme court considered whether the trial court properly refused the defendant's reckless homicide instruction in a murder trial where the defendant "always claimed that he merely accidentally strangled [the victim] and no eyewitnesses were presented to claim anything to the contrary." 675 N.E.2d at 1078. It concluded

> that the defendant's statement to the police that he choked [the victim] with her T-shirt, the fact that ligature strangulation was the cause of death, and the other evidence at trial concerning the choking and strangulation, gave the trial court sufficient justification to conclude that there was no serious evidentiary dispute that the defendant was acting with an awareness of a high probability that he was engaged in killing.

*Id.* The fact that *Heavrin* specifically addresses a reckless homicide instruction does not diminish its relevance to this case because there, as here, the primary concern was whether there was a serious evidentiary dispute that the defendant was acting with the requisite mens rea for murder.[2]

Erlewein also contends that *Heavrin* is factually distinguishable from this case because the defendant in that case committed the strangulation by means of a ligature while Erlewein used his bare hands to choke A.E. This is a distinction without a difference. Although the pathologist who performed the autopsy on A.E. did mention the possibility that manual strangulation could result in instant cardiac arrest, he opined that A.E. died from asphyxia and described why he came to that conclusion. To asphyxiate A.E. by manual strangulation, the pathologist testified that it would have taken a minimum of forty-five seconds to as much as four minutes. Choking someone for a minimum of forty-five seconds clearly evinces an intent to kill or, at the very least, an awareness of a high probability that death would result. Additional evidence of Erlewein's mens rea comes from his failure to take any action to try to resuscitate A.E. and waiting nearly two hours to call 911 [3] and his beating of A.E. before he choked her, to which A.E. did not put up "much of a struggle." Tr. p. 484. Erlewein's initial interviews with law enforcement were also deceptive, as he denied having any recollection of what occurred other than finding himself with his arm around A.E.'s neck and her not moving, in contradiction to Erlewein's trial testimony. He also denied having beaten A.E. prior to her strangulation, claiming he remembered nothing in between the time when he and A.E. were talking and when he removed his arm from around her neck.

Finally, although Erlewein attempts to minimize it, we find the following testimony on cross-examination to be highly relevant:

---

2. Erlewein also notes that the trial court in *Heavrin* did, in fact, give an involuntary manslaughter instruction to the jury. 675 N.E.2d at 1077. That fact, however, has no relevance to whether the trial court either here or in *Heavrin* was *required* to give such an instruction or lacked the discretion to refuse one.

3. Erlewein contends that it would have been "futile" to attempt to resuscitate A.E. because he had already determined that she was not breathing and had no pulse. The very definition of resuscitation is to revive from apparent death. *See* Stedman's Medical Dictionary 1534 (26th ed. 1995). If Erlewein could not have done so, emergency medical personnel might have attempted to perform CPR if Erlewein had immediately called 911.

Q: And you didn't like the information did you [that A.E. was pregnant by another man]?

A: No I did not.

Q: And that's why you killed her?

A: That's not why I killed her.

Q: Why?

A: Numerous of [sic] reasons. It just wasn't the one reason. It was the fact she, it, she made me mad, she was laughing at me, she seemed to care only about what she wanted in her life, not, she didn't seem to care for others, other people's feelings, concerns. She seemed like she, to me, felt she could basically treat people the way she wanted to and expect them to accept that and deal with that.

Q: And you didn't like that?

A: No I did not.

Tr. pp. 490–91. Thus, Erlewein explained his motives behind the actions he took on January 4, 2001, and they do not indicate any intent to merely batter A.E. rather than kill her.

■ "A verbal denial of the requisite criminal intent does not ipso facto create a 'serious evidentiary dispute' within the meaning of *Wright.* The other evidence may unequivocally show sufficient intent to commit the crime charged." *Champlain v. State,* 681 N.E.2d 696, 701 n. 6 (Ind.1997). Apart from Erlewein's denial that he knowingly or intentionally killed A.E., we find the trial court had sufficient justification for concluding the other evidence in this case unequivocally demonstrates the opposite. This case differs, for example, from *Lynch v. State,* 571 N.E.2d 537 (Ind. 1991), where our supreme court held it was reversible error to refuse the defendant's involuntary manslaughter instruction.

There, *in addition to* the defendant's denial that he intended to kill his father when he shot him with a shotgun, he also specifically claimed he was insane and only wanted to wound his father so that he and his father would be able to reconcile while he was in the hospital. *Id.* at 538. Further, "Lynch's calling the police immediately after the shooting could support the conclusion that the injury had been more serious than he had intended or that he did not intend for his father to die. Similarly, reasonable minds could conclude that the initial entry of the bullet into the arm could negate an intent to kill." *Id.* at 539. Here, all of the evidence in this case apart from Erlewein's general denial that he did not knowingly or intentionally kill his wife contradicts that denial. Unlike the defendant in *Lynch,* Erlewein took no action to attempt to aid A.E. after he finished choking her, and a minimum of forty-five seconds of manual strangulation cannot be compared to a possibly poorly aimed and instantaneous gunshot. The trial court did not abuse its discretion in refusing to tender Erlewein's involuntary manslaughter instruction to the jury.

### Conclusion

The trial court properly refused to give an involuntary manslaughter instruction to the jury. We affirm.

Affirmed.

BAKER and VAIDIK, JJ., concur.