**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**THOMAS P. KELLER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 18 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRENTON JONES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1112-CR-594 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable R.W. Chamblee, Jr., Judge
Cause No. 71D08-1006-MR-5

**December 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Trenton Jones and DeCarlo Hockaday argued at a party in South Bend because Hockaday was "fooling around" with LaQuisha Lee, who had a child with Jones' cousin. At some point, Jones retrieved a firearm from his mother's car, returned to the house, and shot Hockaday five times, killing him. Jones testified that he saw Hockaday pull a gun from his pants and then Jones fired one shot at the floor before firing several more shots without looking as he ran from the house.

At trial, Jones requested a jury instruction on involuntary manslaughter, a request that was denied. A jury convicted Jones of murder and the trial court sentenced him to fifty years of incarceration. Jones contends that the trial court abused its discretion in refusing to instruct the jury on involuntary manslaughter and that the State failed to produce sufficient evidence to sustain his murder conviction. Concluding that the evidence did not support the giving of an involuntary manslaughter instruction and that the State produced sufficient evidence to sustain his conviction, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On the evening of June 7, 2010, several persons, including Trenton Jones, Barbara Ball, and Christina Phillips gathered at Taisha Murray's home in South Bend for a party, which involved consumption of alcohol, marijuana, and the drug "ecstasy." Tr. p. 618. At some point, DeCarlo Hockaday arrived with LaQuisha Lee, which did not sit well with Jones, as Lee had previously been involved with Jones's cousin Marvin "Boobie" Sykes, with whom Lee had a child. Throughout the evening, Jones and Hockaday argued on and off, with Jones pushing Hockaday in the face once.

2

At approximately 1:30 a.m. on June 8, 2010, Jones went to his mother's Impala parked outside and retrieved a firearm. Jones returned to the house and began shooting, hitting Hockaday five times: in the left forearm, the lower right leg, the lower left leg, the left ankle, and the left chest. The slug that entered Hockaday's body in his chest traveled through his heart, killing him.

On June 9, 2010, the State charged Jones with murder, a felony. On April 20, 2011, the trial court declared a mistrial following Jones's first trial because the jury was unable to reach a unanimous verdict. Jones's second trial began on August 22, 2011. During Jones's second trial, he requested that the trial court instruct the jury on involuntary manslaughter, a request the trial court denied. The jury convicted Jones of murder, and the trial court sentenced him to fifty years of incarceration.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused its Discretion in Instructing the Jury

> When asked to instruct the jury on a lesser included offense, trial courts are to apply the three part test set out in *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995). Parts one and two require the trial court to determine whether the lesser included offense is either factually or inherently part of the greater offense. If so, *Wright* requires the trial court to determine if there is a "serious evidentiary dispute" as to any element that distinguishes the greater offense from the lesser. This is shorthand for *Wright*'s full holding that "if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* at 567.

*Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998).

"Involuntary Manslaughter is not an inherently included offense of Murder." *Wright*,

3

658 N.E.2d at 569. As such, the next step is to determine if the lesser crime is *factually* included. To do so, the trial court "must compare the statute defining the alleged lesser included offense with the charging instrument in the case." *Id*. at 567.

> If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged, and the trial court should proceed to [determine if there is a serious evidentiary dispute regarding the lesser crime].

*Id*.

The State does not dispute that involuntary manslaughter is a factually included offense in this case.[1] The question, then, is whether the record contains a serious evidentiary dispute that would warrant an involuntary manslaughter instruction. Here, the trial court concluded that no serious evidentiary dispute existed, and so did not instruct the jury on involuntary manslaughter.

To put Jones's claim in context, "[a] person who kills another human being while committing or attempting to commit … a Class C or Class D felony that inherently poses a risk of serious bodily injury … commits involuntary manslaughter, a Class C felony." Ind. Code § 35-42-1-4(c). In requesting an involuntary manslaughter instruction, Jones argued that the underlying Class D felony posing a risk of bodily injury was pointing a firearm. "A person who knowingly or intentionally points a [loaded] firearm at another person commits a

---

[1] In its charging information, the State alleged that Jones "did knowingly kill DeCarlo Hockaday, by shooting him, causing him to die." Appellant's App. p. 64. The means used to commit the murder as charged clearly included pointing a firearm at Hockaday before shooting him, rendering the involuntary manslaughter charge a factually included charge in this case.

4

Class D felony." Ind. Code § 35-47-4-3(b).

The approach taken by the Indiana Supreme Court in a similar case guides our analysis. In *Evans v. State*, 727 N.E.2d 1072 (Ind. 2000), the question was whether Evans was entitled to an involuntary manslaughter instruction where the alleged underlying felony for the charge was battery. The Indiana Supreme Court concluded that the involuntary manslaughter charge was factually included because the charging information alleged that Evans "'intentionally killed James Harris by means of a knife, a deadly weapon[.]'" *Id*. at 1081. Noting that "[k]illing an individual with a knife is necessarily accomplished by [a battery,]" the Court turned to the final step of the *Wright* analysis, *id*., as we must do.

The Court observed first that the critical element distinguishing involuntary manslaughter from murder was "intent – the intent to kill or the intent to batter." *Id*. Regarding the intent to batter, the Court noted that there was no evidence or claim by Evans that he intended only to batter his victim. *Id*. Regarding the intent to kill, the Court noted evidence of Evans's "professed intent to kill[,]" which the trial court had concluded "'exclude[d] any arguable grounds to suggest that [Evans] didn't have an intent to kill.'" *Id*. The Court concluded that the trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter. *Id*. at 1082.

Here, there is no evidence that Jones had the intent only to point a firearm at Hockaday. Indeed, Jones specifically denied that he knowingly or intentionally pointed his firearm at Hockaday, testifying that his first shot was aimed at the floor and that subsequent shots were taken as he fled and without looking where he was aiming. As for evidence

regarding Jones's intent to kill, we conclude that the fact that Jones shot Hockaday several times excludes any arguable grounds that he lacked the intent to kill. There is no serious evidentiary dispute that Jones, by shooting Hockaday several times at close range, only intended to point his firearm at him. *See Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012) ("In the present case, there was no serious evidentiary dispute that Collins, by shooting McKinley several times, only intended to commit a battery.… When one shoots another person multiple times at close range, a reasonable jury could infer that the shooter's intent was to kill, not batter, the victim."). The trial court did not abuse its discretion in instructing the jury.

## II. Whether the State Produced Sufficient Evidence to Sustain Jones's Conviction

Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

> In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the [finding of guilt] and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable [finder of fact] could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted).

In order to convict Jones of murder, the State was required to establish that he "knowingly or intentionally kill[ed] another human being." Ind. Code § 35-42-1-1. Murray, Ball, and Phillips all testified that Jones and Hockaday became involved in an argument regarding Hockaday's relationship with Lee. All three witnesses testified that they saw Jones leave Murray's house, return with a firearm, and then shoot Hockaday. Pointing to some

6

changes in Murray's and Phillips's testimony from the first trial to the next, Jones argues that "[t]he differences in testimony between the two trials should render state's witness[es] not credible[.]" Appellant's Br. p. 9. Jones's argument is nothing more than an invitation to reweigh the evidence, which we will not do. The State produced sufficient evidence to sustain Jones's conviction.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.