## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antoine A. Jefferson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 12, 2019

Court of Appeals Case No.
18A-CR-1836

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1710-MR-14

**Barteau, Senior Judge.**

# Statement of the Case

[1] Antoine Jefferson appeals his conviction of murder, a felony.[1] We affirm.

# Issue

[2] Jefferson raises one issue, which we restate as: whether the trial court abused its discretion in rejecting Jefferson's proposed jury instructions regarding alleged lesser included offenses.

# Facts and Procedural History

[3] On October 21, 2017, Everett Harper, age sixty-five, was visiting his daughter, Shakisha Martin, at the motel room she shared with her then-boyfriend in South Bend, Indiana. All three drank alcohol. Harper drank too much and was talking loudly. Martin's boyfriend asked Harper to leave, but he refused.

[4] Martin's cousins, Adrian Evans and thirty-year-old Antoine Jefferson, arrived at the motel room in the late morning or early afternoon. Evans wanted to talk with Martin's boyfriend about fixing one of Evans' vehicles. Martin gave Jefferson some beer and a cup of liquor.

[5] Harper continued to drink alcohol and talk loudly as he sat on the air conditioning unit. He talked about "nonsense," such as things that occurred when he lived in Detroit and when Martin was younger. Tr. Vol. 2, p. 58.

---

[1] Ind. Code 35-42-1-1 (2017).

Jefferson, Martin, and Martin's boyfriend wanted Harper to leave the motel room, but he refused, claiming he had helped to pay for the alcohol and wanted to keep drinking. Harper also argued with Jefferson as Jefferson tried to listen to a song. However, Harper did not threaten Jefferson. In addition, Martin, Evans, and Martin's boyfriend were not scared of Harper. He did not have a handgun.

[6] At one point, Jefferson asked Martin to accompany him to the parking lot. Jefferson retrieved a handgun from Evans' vehicle and showed it to Martin. When they returned to the motel room, Jefferson brought the handgun with him and laid it on the bed. Martin was scared because she thought "something [was] going to happen." *Id.* at 29.

[7] Ten minutes later, as Harper kept talking, Jefferson brandished the handgun and told him, "don't say one more thing to me." *Id.* Harper kept talking. Jefferson shot Harper multiple times and fled from the room with Evans. Harper fell off the air conditioner and slumped over into a corner of the room. Evans and Jefferson left the motel in Evans' vehicle while Martin called 911.

[8] At around 2:40 p.m., Corporal Ronald Glon of the South Bend Police Department overheard a radio report of a shooting at a motel near his location. He drove to the motel, where he was directed to Martin's room. Corporal Glon found Harper slumped over in the corner of the room. He also saw spent shell casings on the floor. Corporal Glon checked Harper for a pulse and did not find one. Medics entered the room and determined Harper was dead.

[9] An autopsy later revealed that Jefferson had shot Harper at least six times. Harper had sustained a total of eight gunshot wounds, meaning that at least one of the bullets had exited and then reentered his body in a different location. One of the bullets had pierced Harper's heart, which resulted in "[i]mmediate incapacitation and death." Tr. Vol. 3, p. 27. A toxicology screen showed that Harper's blood alcohol content was three times the legal limit, at 0.264 percent.

[10] Meanwhile, Evans dropped Jefferson off at a friend's house. Jefferson asked his friend to give him a ride to another person's house. Jefferson left a bundled-up white t-shirt in the friend's vehicle. After the friend dropped off Jefferson and ran some additional errands, he looked in the t-shirt and found a handgun and some ammunition. He put the shirt and the handgun in a dresser in his home. Later that night, the police came to the friend's home, and he showed them the handgun. Subsequent ballistics testing of the handgun and the shell casings that were found in the motel room revealed that the handgun had fired the rounds that killed Harper. In addition, testing of the white t-shirt revealed the presence of DNA that matched Jefferson's DNA profile.

[11] Jefferson's friend had taken him to the home of Jefferson's girlfriend. When Jefferson woke her up, he was carrying a hoodie but was not wearing a shirt. Jefferson told his girlfriend that he had shot someone and thought that he killed the person. She became upset and drove him to his cousin's house. After she returned home, she discovered that Jefferson had left a bag at her home. She threw the bag into a dumpster. Later, the police came to her house, and she showed them the dumpster, from which they retrieved the bag. The bag

contained Jefferson's sneakers, the box for the handgun, and an ammunition clip for the handgun, among other items. Subsequent testing revealed Jefferson's palm print was on the ammunition clip.

[12] Later on the day of the shooting, Jefferson and his cousin called Jefferson's father, Anthony Evans. Jefferson told Evans that he had shot Harper because there was an argument, and Jefferson "got irritated" because Harper "wouldn't stop talking." *Id.* at 74. Jefferson further said that Harper "was talking s**t and wouldn't shut up," even after Jefferson showed his handgun to Harper. *Id.* at 76. Jefferson surrendered to the police the next day.

[13] On October 23, 2017, the State charged Jefferson with murder. The State subsequently filed a firearm sentencing enhancement. The murder charge was tried to a jury. During a jury instructions conference, Jefferson tendered instructions on voluntary manslaughter and reckless homicide as lesser included offenses of murder. The trial court rejected those proposed instructions. The jury determined Jefferson was guilty of murder. Next, Jefferson waived his right to a jury trial on the firearm sentencing enhancement. The court determined the elements of the enhancement were proved beyond a reasonable doubt. The court imposed a sentence, and this appeal followed.

## Discussion and Decision

[14] Jefferson argues the trial court erred in rejecting his proposed jury instructions two, three and six on voluntary manslaughter and reckless homicide as lesser included offenses of murder. The Indiana Supreme Court has set forth a three-

part test for determining when a trial court should instruct the jury on a lesser included offense:

> Part one requires the trial court to determine whether the lesser offense is 'inherently' included in the offense charged by comparing the statute defining the crime charged with the statute defining the alleged lesser included offense. If necessary, part two of the *Wright* [*v. State*, 658 N.E.2d 563 (Ind. 1995)] test alternatively requires the trial court to determine whether the lesser offense is 'factually' included in the offense charged by comparing the charging instrument with the statute defining the alleged lesser included offense.
>
> Finally, if the court concludes that the lesser offense is either inherently or factually included in the offense charged, then part three requires the court to determine whether a serious evidentiary dispute exists as to which offense was committed by the defendant, given all the evidence presented by both parties. If a serious evidentiary dispute does exist, it is reversible error not to give the instruction on the inherently or factually included lesser offense.

*Evans v. State*, 727 N.E.2d 1072, 1080-81 (Ind. 2000) (quotations and citations omitted).

[15] The State does not dispute Jefferson's assertion that the offenses of voluntary manslaughter and reckless homicide are inherently or factually included in the offense of murder. The State instead argues there is no serious evidentiary dispute as to whether Jefferson committed murder.

[16] The trial court rejected Jefferson's proposed instructions based on the evidence presented, concluding the circumstances of Harper's shooting did not support

instructions for either voluntary manslaughter or reckless homicide. Tr. Vol. 3, pp. 187-38. "[I]n deference to the trial court's proximity to the evidence, we review a decision whether to instruct the jury on lesser included offenses for an abuse of discretion if the court makes a finding as to the existence or lack of a 'serious evidentiary dispute.'" *Erlewein v. State*, 775 N.E.2d 712, 714 (Ind. Ct. App. 2002) (quoting *McEwen v. State*, 695 N.E.2d 79, 84 (Ind. 1998)), *trans. denied*. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Johnson v. State*, 959 N.E.2d 334, 340 (Ind. Ct. App. 2011), *trans. denied*.

## I. Voluntary Manslaughter

[17] Voluntary manslaughter is a lesser included offense of murder, differing only in the presence of sudden heat, which is "a mitigating factor." *Watts v. State*, 885 N.E.2d 1228, 1231 (Ind. 2008). Sudden heat is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Dearman v. State*, 743 N.E.2d 757, 760 (Ind. 2001). The crime of voluntary manslaughter thus "involves an 'impetus to kill' which arises 'suddenly.'" *Suprenant v. State*, 925 N.E.2d 1280, 1283 (Ind. Ct. App. 2010) (quoting *Stevens v. State*, 691 N.E.2d 412, 427 (Ind. 1997)), *trans. denied*.

[18] It is well established that insulting or taunting words alone are not sufficient provocation to reduce murder to manslaughter. *Jackson v. State*, 709 N.E.2d

326, 329 (Ind. 1999). In addition, evidence of mere anger does not support a jury instruction on voluntary manslaughter. *Champlain v. State*, 681 N.E.2d 696, 702 (Ind. 1997). It is reversible error to give an instruction on voluntary manslaughter in the absence of evidence of a serious evidentiary dispute on sudden heat. *Watts*, 885 N.E.2d at 1232.

[19]　In the *Watts* case, Watts and two companions were approached by the victim, Atkins, who argued with them and appeared to be trying to provoke them. Atkins also quarreled with another nearby person. Watts shot Atkins in the back as Atkins walked away. The trial court instructed the jury on voluntary manslaughter over Watts' objection, and the jury convicted him of that offense. On appeal, the Indiana Supreme Court reversed, determining there was "no possible evidence" of sudden heat. *Id.* at 1233. The Court deemed Atkins' insults and taunts to be insufficiently provocative.

[20]　In Jefferson's case, there is no dispute that Harper was drunk, loud, and argumentative. He refused numerous requests by Jefferson and others to leave the motel room or to be quiet. Harper also argued with Jefferson when Jefferson attempted to listen to a song. Even so, the record fails to show that Harper threatened anyone or attempted to provoke a physical altercation. As was the case in *Watts*, Harper's insults and argumentative statements were not sufficient provocation to establish evidence of sudden heat.

[21]　Further, the record reflects that Jefferson acted rationally instead of under the influence of sudden heat, and his impetus to kill did not arise suddenly. After

Harper continued to talk loudly and argumentatively despite Jefferson's and others' repeated requests to leave or be quiet, Jefferson brought the handgun into the motel room and placed it on the bed ten minutes before the shooting. Jefferson later told his father that Harper had "irritated" him by continuing to talk, even after Jefferson displayed the handgun. Tr. Vol. 3, p. 74. After the shooting, Jefferson took steps to hide the murder weapon, the ammunition, and the clothes he had been wearing. *See Suprenant*, 925 N.E.2d at 1284 (no error in refusing to instruct jury on voluntary manslaughter; Suprenant and victim had argued for hours prior to fatal stabbing, indicating absence of a "sudden" impetus to kill).

[22] Jefferson cites *Brantley v. State*, 91 N.E.3d 566 (Ind. 2018), *cert. denied*, 2019 WL 113423 (2019), in support of his claim, but that case is distinguishable for two reasons. First, the *Brantley* case presented "the unusual and rare circumstance where a defendant is charged with voluntary manslaughter without also being charged with murder." *Id.* at 568. As a result, the question of instructing the jury on a lesser included offense was not at issue. Second, the Indiana Supreme Court determined there was sufficient, "although scant," evidence of sudden heat in Brantley's case because he lived in a house where domestic violence was common and the victim angrily arose from his chair with a shiny object in his hand, possibly a knife, just before Brantley shot him. *Id.* at 572. By contrast, in Jefferson's case there is no evidence that Harper threatened anyone with violence at any time in the motel room, and he made no moves, violent or otherwise, prior to Jefferson shooting him. The trial court did not abuse its

discretion by refusing to give Jefferson's proposed jury instructions on voluntary manslaughter.

## II. Reckless Homicide

[23] When the State seeks to prove the crime of murder, it must demonstrate beyond a reasonable doubt that a defendant "knowingly or intentionally" killed another human being. Ind. Code § 35-42-1-1. By contrast, the crime of reckless homicide is defined as "recklessly" killing another human being. Ind. Code § 35-42-1-5 (2014). As a result, the only distinguishing characteristic between murder and reckless homicide is the level of mental culpability required for each offense. *Evans*, 727 N.E.2d at 1082.

[24] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). (1977). On the other hand, a "person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c).

[25] In this case, Jefferson shot Harper six times as Harper sat on an air conditioner. Shooting a victim multiple times is evidence of an awareness of a high probability that the victim will be killed. *See Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (no evidentiary dispute to support reckless homicide instruction as lesser included offense of murder; Johnson shot the victim multiple times at close range, resulting in eleven gunshot wounds). There is no

evidence that Jefferson demonstrated mere disregard for potential harm to Harper. For example, he did not brandish the firearm only to have it discharge accidentally, nor did he fire at random without specifically aiming at anyone.

Jefferson cites *Webb v. State*, 963 N.E.2d 1103 (Ind. 2012), in which the Indiana Supreme Court reversed Webb's murder conviction, determining that the trial court erroneously rejected Webb's proposed jury instruction on reckless homicide as a lesser included offense. In that case, it was unclear whether Webb knew the gun had a round in it when he shot his girlfriend. In addition, after the shooting Webb told a witness that the shooting was accidental. Based on that evidence, the Indiana Supreme Court determined there was a serious evidentiary dispute as to whether Webb acted knowingly or recklessly.

By contrast, Jefferson's gun was under his control the whole time, and there was no dispute as to whether he knew it was loaded. Furthermore, Jefferson never claimed the shooting was an accident. Instead, he told his father he shot Harper because Harper irritated him. The *Webb* case is factually distinguishable from Jefferson's case, and the trial court did not abuse its discretion by refusing to give Jefferson's proposed jury instruction on reckless homicide. *See Miller v. State*, 720 N.E.2d 696, 703 (Ind. 1999) (no error in rejecting proposed jury instruction on reckless homicide as lesser included offense of murder; Miller shot at the victim, who was seated in a car, multiple times, demonstrating evidence of a knowing killing rather than a reckless killing).

# Conclusion

[28] For the reasons stated above, we affirm the judgment of the trial court.

[29] Affirmed.

Najam, J., and Brown, J., concur.