**Darrick D. PINKSTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02A03–0403–CR–133.**

Court of Appeals of Indiana.

Dec. 29, 2004.

Publication Ordered Jan. 26, 2005.

Transfer Denied March 3, 2005.

---

Gregory L. Fumarolo, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Darrick D. Pinkston appeals his convictions for Murder,[1] a felony, Attempted Murder,[2] a class A felony, Carrying a Handgun Without a License,[3] a class C felony, Resisting Law Enforcement,[4] a class D felony, and with being a Habitual Offender.[5] Specifically, Pinkston argues that: (1) the trial court erred in granting the State's challenge for cause of a potential juror who was an African–American; (2) the trial court erroneously admitted evidence of a prior "bad act" that he had allegedly committed; (3) the trial court erroneously admitted a photograph of the murder victim, along with trial testimony of his sister regarding her relationship with the victim; (4) the trial court erred in refusing to give instructions on lesser included offenses; and (5) the State failed to adequately negate his claim of self-defense beyond a reasonable doubt.

Concluding that there was no reversible error, we affirm the judgment of the trial court.

## FACTS

On January 18, 2003, at approximately 1:45 a.m., Derek Taylor went to Mickey & Billy's bar in Fort Wayne with Clarence Martin and several others. At some point, Taylor noticed Pinkston and Shea—Pinkston's girlfriend—exit the bar. Pinkston approached Taylor and talked with him for a while. Shortly thereafter, Pinkston and Lewis—another individual at the bar—got into a fight. The altercation escalated, and other individuals joined in the fight. Pinkston then ran over to a vehicle where Shea was standing and retrieved a .45 caliber pistol. Pinkston placed the gun in his pocket and walked up to a group of individuals where he shot and killed Martin at close range. Pinkston then ran after Taylor, shot him once in the back, and fled the scene in a white Cavalier automobile.

When the police arrived, Taylor told one of the officers that Pinkston had shot him. After spotting Pinkston's vehicle, the po-

---

1. Ind.Code § 35–42–1–1.

2. I.C. § 35–42–1–1; Ind.Code § 35–41–5–1.

3. Ind.Code § 35–47–2–1; I.C. § 35–47–2–23.

4. Ind.Code § 35–44–3–3.

5. Ind.Code § 35–50–2–8.

lice pursued him through Fort Wayne at speeds of over ninety-five miles per hour. The chase finally ended when Pinkston's vehicle ran over some "stinger sticks" that deflated the vehicle's tires. Tr. p. 509. Pinkston ran from the automobile, but he was eventually apprehended and arrested.

Pinkston was ultimately charged with the above offenses. When the jury trial commenced on October 28, 2003, the prosecutor asked the jury pool members if there was any reason why they could not be fair and impartial. In response, Juror 126 replied that she was "the only African-American, ... on this jury. I feel like I have a duty to protect him from the other eleven." Tr. p. 74–75. The juror went on to acknowledge that she would defend Pinkston probably "more than she should." Tr. p. 75. Thereafter, the State was permitted to have this juror excused for cause.

At some point during the trial, the jury was allowed to hear evidence that Pinkston told two individuals—while he was awaiting trial in the Allen County Confinement Facility—that he "killed a motherf\* \* \*r before and got off and I'll get off again." Appellant's App. p. 215–17. The State was also permitted to introduce a photograph of Martin into evidence, as well as testimony from Martin's sister where she testified about her relationship with her brother and related some personal information about him to the jurors.

After the evidence was heard, Pinkston requested that the trial court instruct the jury on the lesser-included offense of reckless homicide with regard to the murder charge, and battery as it related to the attempted murder count. The trial court denied these requests and, notwithstanding Pinkston's claim of self-defense, he was found guilty as charged. Pinkston now appeals.

## DISCUSSION AND DECISION

### I. Challenging African–American Juror for Cause

■ Pinkston claims that the trial court erred in granting the State's challenge for cause of a potential juror who was an African–American woman. Specifically, Pinkston asserts that the record does not support the trial court's conclusion that the juror could be excused because "she can't be fair to the State," Appellant's Br. p. 22–23.

■ In resolving this issue, we first note that Article 1, Section 13 of the Indiana Constitution guarantees to a defendant the right to an impartial jury. *Badelle v. State*, 754 N.E.2d 510, 541 (Ind. Ct.App.2001), *trans. denied.* Therefore, a biased juror must be dismissed. *Joyner v. State*, 736 N.E.2d 232, 238 (Ind.2000). That said, Indiana Code section 35–37–1–5 governs challenges "for cause" and provides in relevant part:

(a) The following are good causes for challenge to any person called as a juror in any criminal trial:

. . .

(11) That the person is biased or prejudiced for or against the defendant.

■ A companion statute, Indiana Code section 35–37–1–6 provides that "all challenges for cause shall be made before the jury is sworn to try the cause, and shall be summarily tried by the court on the oath of the party challenged or other evidence." We also note that the decision whether to excuse a juror for cause rests with the trial court's discretion. *Whitehair v. State*, 654 N.E.2d 296, 306 (Ind.Ct.App.1995). It is the trial judge who is in the best position to assess the demeanor of prospective jurors. *Id.*

As set forth in the *FACTS*, Juror 126, who was an African–American female, indicated in her remarks to the prosecutor that she would defend Pinkston more than she should because she felt that he needed protection from the remaining eleven white jurors. Tr. p. 75–76. In light of these comments, it is apparent to us that Juror 126 would certainly consider race a factor in her deliberation over Pinkston's guilt or innocence. Moreover, from the colloquy that the juror had with the prosecutor, we agree with the trial court's conclusion that Juror 126 was biased in favor of Pinkston on account of his race. In essence, the juror's comments could reasonably lead to the conclusion that the juror could not be fair to the State. Hence, we reject Pinkston's argument that the trial court's decision to exclude juror 126 was unwarranted.

■ Finally, we reject Pinkston's contention that he should be granted a new trial because his "defense counsel was prevented ... from further questioning Juror 126 regarding concern she raised about the racial composition of the jury." Appellant's Br. p. 23. The record reflects that the trial court permitted Pinkston's counsel to continue questioning the jury panel about racial concerns and overruled an objection from the State when defense counsel did so. Tr. p. 83. Pinkston had the opportunity to ask the juror additional questions, but he chose not to do so. Moreover, Pinkston fails to explain what additional questions his defense counsel may have wanted to ask. Therefore, because the trial court followed the procedures set forth in Indiana Code section 35–37–1–6 regarding the challenge of a juror for cause, and properly exercised its discretion in concluding that Juror 126 should be excused on the ground of bias or prejudice, we find no error.

## II. Admission of Prior Bad Acts

■ Pinkston next contends that the trial court erroneously admitted evidence of a "prior bad act" at trial. Specifically, Pinkston maintains that permitting testimony that Pinkston had stated—while incarcerated and awaiting trial—that he had "killed a motherf* * * *r before and got away with it and I'll get off on this one too," Appellant's App. p. 215–17, was irrelevant and prejudicial to the extent that he should be granted a new trial.

■ In general, the decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Carpenter v. State*, 786 N.E.2d 696, 704 (Ind.2003). The admission or exclusion of evidence generally will not be reversed on appeal absent a manifest abuse of discretion that results in a denial of a fair trial. *Zawacki v. State*, 753 N.E.2d 100, 102 (Ind.Ct.App.2001), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Myers v. State*, 718 N.E.2d 783, 789 (Ind.Ct.App. 1999).

■ Turning to the particulars here, we note that Indiana Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When the defendant lodges an objection under this rule, the trial court should: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and

(2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Rule of Evidence 403. *Evans v. State*, 727 N.E.2d 1072, 1079 (Ind. 2000). The trial court has wide latitude in weighing the probative value of admitting the evidence against the possible prejudice of its admission, and the ruling will be reviewed only for an abuse of discretion. *Id.* This court has found that evidence of prior bad acts is relevant to negate a claim of contrary intent. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind.Ct.App.2004). The intent exception under Evidence Rule 404(b) is available when the defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. *Id.*

We simply cannot agree with Pinkston's assertion that the statement he purportedly made to the individuals while incarcerated should have been excluded because it "ambiguously refers to an unsubstantiated and unrelated bad act which occurred prior to the crime for which he was charged." Appellant's Br. p. 11. To be sure, Pinkston's declaration that he had killed someone, had gotten away with it, and intended to "get off on this one, too," was highly relevant to prove Pinkston's intent to murder Martin and to rebut his alleged claim that he had not been the aggressor in the incident.

By way of illustration, in *Evans v. State*, 727 N.E.2d 1072 (Ind.2000), Evans had attacked two victims. He had inflicted a number of stab wounds on one of the victims, killing him. When Evans sought to raise the claim of self-defense, the trial court admitted evidence of a prior incident where Evans had choked one of the victims. Holding that this evidence was properly admitted, our supreme court observed that the evidence of the prior bad act was admissible to negate Evans's self-defense argument and, similarly, it was admissible to rebut the assertion that one of the victims was the actual aggressor. *Id.* at 1080. Similarly, in this case, the admission of Pinkston's statement was highly probative to contradict his self-defense claim and to show that he intended to murder Martin without justification. The statement also established that Pinkston acted in an aggressive manner and was not merely responding to a threat. As a result, we conclude that the trial court properly admitted the statement as evidence of intent and to rebut Pinkston's claim of self-defense.

■ Next, we must also determine whether the statement was properly admitted in accordance with Indiana Evidence Rule 403. This rule provides in pertinent part that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Here, the probative value of the statement established that Pinkston's motive and intent was to kill Martin and Taylor. Under these circumstances, it is certainly reasonable to conclude that Pinkston's statement equated his shooting of the victims here to a person that he had previously killed. As a result, such evidence was highly probative and was properly admitted under the "intent" exception to Evidence Rule 404(b).

### III. Admission of Photograph and Testimony

■ Pinkston next complains that the trial court erred in allowing the State to admit a photograph of Martin into evidence, along with testimony of Martin's sister describing her relationship with him and producing some personal information about him. Specifically, Pinkston claims that he is entitled to a new trial because the testimony and photograph were only "marginally relevant" and "smacked of [in-

admissible] victim impact evidence." Appellant's Br. p. 13.

In resolving this issue, we note that Pinkston failed to lodge a timely objection to the admission of the testimony or to the admission of the photograph of Martin. Our supreme court has determined that an objection to improper testimony is required at the critical point in the trial when the evidence is offered so the trial court may correct the alleged error. *Lenoir v. State*, 515 N.E.2d 529, 529 (Ind. 1987). The requirement for a timely objection applies notwithstanding a trial court's pre-trial ruling—such as a motion in limine—on the admissibility of such evidence. *Nicholson v. State*, 768 N.E.2d 1043, 1047 (Ind.Ct.App.2002).

At trial, Pinkston specifically stated that he had "no objection" when the State moved to admit Martin's photograph into evidence. Tr. p. 356. Also, when Martin's sister testified, Pinkston stated that "my previous objection to her testimony is still on the record," inasmuch as a pretrial motion in limine to exclude that evidence had been filed. Tr. p. 357. We note, however, that Pinkston made no objection until Martin's sister started to testify about her relationship with her brother and had already related some personal information about Martin to the jury. Tr. p. 355–57. Inasmuch as Pinkston failed to make a proper and timely objection to the evidence, the issue is waived.

### IV. Refusal to Give Instructions

Pinkston next argues that the trial court erred in refusing to give his tendered instructions on the lesser-included offenses of reckless homicide as it related to the count of murder, and an instruction on battery with respect to the charge of attempted murder. Specifically, Pinkston maintains that the trial court's refusal to give the tendered instructions amounted to reversible error because a serious evidentiary dispute existed as to whether he committed the offenses as charged.

We initially observe that instructing the jury lies within the sole discretion of the trial court. *Carter v. State*, 766 N.E.2d 377, 382 (Ind.2002). In deciding whether to give a tendered instruction on a lesser included offense, the trial court is required to determine whether the offense is either inherently or factually included in the charged offense and whether there is a serious evidentiary dispute regarding any element that distinguishes the greater offense from the lesser offense. *Evans v. State*, 727 N.E.2d at 1080–81.

In *Wright v. State*, 658 N.E.2d 563, (Ind.1995), our supreme court defined the procedure that trial courts must follow in determining whether to give an instruction on a lesser-included offense. First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser-included offense. If: (a) the alleged lesser-included offense may be established by proof of the same material elements or less than all the material elements defining the crime charged, or (b) the only feature distinguishing the alleged lesser-included offense from the crime charged is that a lesser culpability is required to established the commission of the lesser offense, then the alleged lesser-included offense is inherently included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below. Second, if a trial court determines that an alleged lesser-included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. If the charging instrument alleges that the

means used to commit the crime charged include all of the elements of the alleged lesser-included offense, then the alleged lesser included offense is factually included in the crime charged, and the trial court should proceed to step three below. If the alleged lesser-included offense is neither inherently nor factually included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser-included offense.

 Finally, under step three, if a trial court has determined that an alleged lesser-included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction. *Id.* at 566–67.

 We also note that when a trial court refuses tendered lesser-included offense instructions on their merits, "but the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of that dispute, the standard of review is an abuse of discretion." *Brown v. State,* 703 N.E.2d 1010, 1020 (Ind.1998). "The same is true if the trial court does make a finding that there is no serious evidentiary dispute." *Id.* However, where the defendant at trial identifies a specific evidentiary dispute but the trial court

makes no express finding, de novo is the appropriate standard of review. *Id.*

 Turning to the merits here, we note that our courts have recognized that the only element distinguishing reckless homicide from murder is the requisite culpability. *Davenport v. State,* 749 N.E.2d 1144, 1150 (Ind.2001). That is, the offense of reckless homicide occurs when the defendant "recklessly" kills another human being and murder occurs when the killing is done "knowingly" or "intentionally." *Id.* at 1150–51. Reckless conduct is action taken in "plain, conscious, and unjustifiable disregard of harm that might result." Ind. Code § 35–41–2–2(c). On the other hand, a person engages in conduct "knowingly" if the person "is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). In comparing the elements of these statutes, it is apparent that reckless homicide is an inherently included lesser offense of murder, because the only element distinguishing the two offenses is the defendant's state of mind. *See Sanders v. State,* 704 N.E.2d 119, 122 (Ind.1999).

 In this case, the evidence presented at trial demonstrated that Pinkston shot Martin twice—once while Martin was facing him—and once in the back. Tr. p. 274–75. Immediately before firing, Pinkston remarked, "f* *k this" and shot Martin while standing close to him. Tr. p. 216. Such evidence, at the very least, established that Pinkston acted "knowingly." Therefore, when applying the test set forth in *Wright,* it cannot be said that there was a serious evidentiary dispute with respect to the mens rea. As a result, we conclude that the trial court did not abuse its discretion in refusing Pinkston's tendered instruction on reckless homicide.

With regard to Pinkston's argument that the trial court refused to give his instruction on battery as it related to the attempted murder count, we note that the

offense of battery is defined in relevant part as follows:

> (a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:
>
> (1) a Class A misdemeanor if:
>
> (A) it results in bodily injury to any other person;
>
> . . . .
>
> (3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon[.]

In examining the plain language of the statute, it is apparent that the crime of battery is established by proof that the defendant knowingly and intentionally touched another person in a rude, insolent, or angry manner resulting in bodily injury.

■ Applying the test set forth in *Wright* to the circumstances here, we first note that battery is not an inherently included lesser offense of attempted murder because battery requires a touching, and it is possible to commit the offense of attempted murder without actually touching the intended victim. *See Edwards v. State*, 773 N.E.2d 360, 364 (Ind.Ct.App. 2002), *trans. denied.*

■ Under the second requirement of *Wright*, we go on to compare the battery statute with the language of the charging instrument in this case. In part, the information alleged that Pinkston "discharged a firearm at and/or against the body of Derek Taylor." Appellant's App. p. 21. It is apparent here that the means used to commit the attempted murder encompassed the elements of battery. *See Johnson v. State*, 464 N.E.2d 1309, 1310 (Ind.1984) (holding that firing a round of ammunition at an individual constitutes a "touching" if the round strikes the victim). According-

ly, it can be said that battery is factually a lesser-included offense of attempted murder in this instance.

■ Thus, moving to the final step of *Wright*, we must determine whether there is a serious evidentiary dispute as to any element that distinguishes attempted murder from battery. From the evidence, no serious evidentiary dispute existed that Pinkston at least knowingly attempted to kill Taylor when he chased him down and subsequently shot him. The evidence did not show that Pinkston merely chased Taylor down with the mere intention of "touching" him. Rather, it is apparent from the evidence presented at trial that Pinkston shot Taylor with the intention of killing him. That said, we conclude that there is no serious evidentiary dispute that would serve to negate Pinkston's intent to kill Taylor. As a result, the trial court did not abuse its discretion in refusing Pinkston's tendered instruction on battery.

### V. Self–Defense Claim

Finally, Pinkston claims that his convictions for murder and attempted murder may not stand because the State failed to present sufficient evidence rebutting his claim of self-defense. In essence, Pinkston relies upon the statements that he made to the police officers when the shootings were being investigated, as well as some inconsistencies in the witnesses' testimony at trial.

■ In resolving this issue, we review a challenge to the sufficiency of the evidence to rebut a claim of self-defense using the same standard as for any claim of insufficient evidence. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind.2002). That is, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the tri-

er-of-fact, then the verdict will not be disturbed. *Id.* Next, we note that a valid claim of self-defense is a legal justification for an act that is otherwise defined as "criminal." I.C. § 35–41–3–2(a). To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson,* 770 N.E.2d at 800. An individual is justified in using deadly force only if he "reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person." I.C. § 35–41–3–2(a). The amount of force that an individual may use to protect himself must be proportionate to the urgency of the situation. *Hollowell v. State,* 707 N.E.2d 1014, 1021 (Ind. Ct.App.1999). When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.* Additionally, when a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson,* 770 N.E.2d at 800. The State may satisfy its burden by either rebutting the defense directly or relying on the sufficiency of evidence in its case-in-chief. *Butler v. State,* 547 N.E.2d 270, 271 (Ind.1989).

■ Here, the evidence showed that Pinkston and his victims all were in a public place where each had a right to be. After becoming involved in a physical altercation with several individuals, Pinkston walked to his vehicle, grabbed a handgun, returned to the scene, and began shooting. Although neither of his victims were armed, Pinkston shot Martin twice—killing him—and then chased down Taylor and shot him. This evidence was sufficient to negate Pinkston's claim of self-defense and, even though Pinkston points to some inconsistencies in the witness's statements, he is merely requesting that we reweigh the evidence. It is apparent that the jury, after hearing all of the evidence presented by the parties, observing the witness's demeanor and judging their credibility, clearly rejected Pinkston's version of the events. Thus, there was no error in concluding that the State had rebutted Pinkston's claims of self-defense.

■ As an aside, we note that Pinkston initially contended in his appellate brief that the evidence was insufficient to support his convictions for murder and attempted murder. However, Pinkston fails to set forth any cogent argument for these attacks, other than those that he has incorporated by reference that he has made upon his self-defense claim. Indiana Appellate Rule 46(A)(8) requires that an appellant support each contention with an argument, including citations to legal authorities, statutes, and the record for support. Failure to present a cogent argument constitutes a waiver of that issue for appellate review. *Smith v. State,* 802 N.E.2d 948, 955 n. 7 (Ind.Ct.App.2004). Given the circumstances here, we must conclude that Pinkston has waived his challenge to the sufficiency of the evidence.

■ Waiver notwithstanding, as noted above, Taylor unequivocally testified at trial that he saw Pinkston produce a gun and shoot Martin twice. Immediately thereafter, Pinkston chased Taylor and shot him. Tr. p. 216, 221–22. This court has held that the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal. *Smith v. State,* 809 N.E.2d 938, 941 (Ind.Ct.App. 2004). Moreover, firing a gun in the direction of the victim is sufficient to infer the intent to kill. *Olive v. State,* 696 N.E.2d 381, 382 (Ind.1998). Given the evidence presented at trial, we reject Pink-

ston's claims that his convictions must be reversed on sufficiency grounds.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court properly dismissed a juror pursuant to the State's challenge for cause, and did not err in admitting Pinkston's statements into evidence that Pinkston made while he was incarcerated and awaiting trial. Additionally, Pinkston has waived the argument as to whether a photograph of the murder victim, along with the testimony of his sister, were properly admitted into evidence, and the trial court did not err in refusing to give Pinkston's tendered instructions on lesser-included offenses. Finally, we conclude that the State adequately negated Pinkston's claim of self-defense.

The judgment of the trial court is affirmed.

ROBB, J., concurs.

KIRSCH, C.J., concurs on issues I, III, IV, and V. Dissents on issue II.

## ORDER

This Court having heretofore handed down its opinion in this appeal on December 29, 2004, marked Memorandum decision, Not for Publication.

Comes now the Appellee, by counsel, and files herein Verified Motion for Publication of Memorandum Decision, alleging therein that said decision provides a thorough analysis of three items, namely: 1) a trial court's exclusion of a juror for cause, 2) the application of Indiana Evidence Rules 403 and 404 (b) to a defendant's statement regarding the relationship of the instant crime to a prior crime, and 3) the finding of waiver based on defense counsel's representations.

Said Motion alleges that there are no published decisions in Indiana which have analyzed those issues and that this decision would aid trial courts, practitioners and defendants in fully understanding the application of the rules to these three legal circumstances.

The Court having examined said Motion now finds that the same should be granted.

IT IS THEREFORE ORDERED that upon the above-recited Motion, this Court's opinion heretofore handed down in this cause on December 29, 2004, marked Memorandum Decision, Not for Publication is now ordered published.

All Panel Judges Concur.