**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 02 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT HUSKEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 69A01-1107-CR-390 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable John Westhafer, Special Judge
The Honorable Carl H. Taul, Judge
Cause Nos. 69C01-0910-FB-21, 69C01-9508-CF-37

**April 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

In this consolidated appeal, Robert Huskey appeals his convictions and sentence for attempted sexual misconduct with a minor as a class B felony[1] and sexual misconduct with a minor as a class C felony[2] under cause number 69C01-0910-FB-21 ("Cause No. 21") and the reinstatement of his previously-suspended sentence under cause number 69C01-9508-CF-37 ("Cause No. 37"). Huskey raises three issues, which we revise and restate as:

I. Whether the trial court abused its discretion in removing a prospective juror for cause;

II. Whether Huskey's aggregate sentence for convictions under Cause No. 21 is inappropriate in light of the nature of the offenses and his character; and

III. Whether the court abused its discretion in ordering that Huskey serve his previously-suspended sentence of twenty years under Cause No. 37.

We affirm.

The relevant facts follow. In 1996, pursuant to a plea agreement Huskey pled guilty to criminal confinement as a class B felony under Cause No. 37, and the court sentenced Huskey to twenty years, all suspended to probation.[3] In 2006, the court found that Huskey had violated his probation and continued his probation.

On August 25, 2009, Huskey and his former wife Edith had family members over to their house for dinner and a card game. The family members included Huskey's

---

[1] Ind. Code § 35-42-4-9 (Supp. 2007); Ind. Code § 35-41-5-1 (2004).

[2] Ind. Code § 35-42-4-9.

[3] The charging information alleged that Huskey knowingly removed Dorothy Huskey, Huskey's former wife, "by force from Osgood, Indiana to the states of Ohio, Kentucky, and Tennessee while . . . armed with a deadly weapon, to wit: a Blue Steel .32 Caliber Revolver." Appellant's Appendix at 13.

granddaughter, N.H., who was born on May 6, 1995, and N.H.'s father. N.H. texted and talked on the phone with her friend S.F., and N.H.'s father played cards.

At some point, N.H. wished to go home to her father's house, and Huskey offered to give her a ride. During the trip home, N.H. told Huskey that she was thinking about having sex, and Huskey told her that she "needed to be careful and . . . needed to masturbate or . . . finger [her]self" and that "[t]hat way [she] don't get hurt when [she] have it." Transcript at 243.

After Huskey and N.H. arrived at N.H.'s house, N.H. went to check the phone to see if S.F. had called because she was expecting a call from her, and Huskey went inside with N.H. Huskey approached N.H., and N.H. believed Huskey was going to give her a hug before he left, but Huskey then kissed N.H. on the lips. Huskey "pulled down [N.H.'s] top and got [her] breast out" and "sucked on [her] nipple." Id. at 244. Huskey then moved his hand down to unbutton N.H.'s pants, and "as soon as he got inside of [her] pants . . . [N.H.] held his hand" and told him "don't or that I don't want to." Id. Huskey stated "I just want to know how loose you are or how many fingers you can get." Id. The phone rang, and N.H. stated that she needed to answer the phone and went to answer it. As N.H. picked up the phone, Huskey walked out of the house.

N.H. went to her room, saw that Huskey had left, and spoke with S.F. on the phone, crying and telling S.F. that she was upset because of what had just happened with Huskey. S.F. called N.H.'s father, who was still at Huskey's house, and told him that he needed to go home because N.H. was upset. N.H.'s father went home, and N.H. told him what Huskey did to her. N.H.'s father then returned to Huskey's house and confronted

3

him. Huskey stated that he had tried to hug N.H. and she took it the wrong way. N.H.'s father asked Huskey to go to Florida, where Edith had a home, and Huskey agreed. The following morning, Huskey and Edith left to travel to Florida.

Indiana State Police Detective Vance Patton investigated the case and, in October 2009, obtained a warrant for Huskey's arrest. On October 2, 2009, the State charged Huskey under Cause No. 21 with: Count I, attempted sexual misconduct with a minor as a class B felony;[4] and Count II, sexual misconduct with a minor as a class C felony.[5] On May 20, 2010, the probation department filed a petition for probation violation hearing under Cause No. 37 based upon the charges against Huskey under Cause No. 21. Huskey was eventually arrested in Butler County, Ohio, on December 28, 2010.

During *voir dire* prior to Huskey's jury trial, a prospective juror indicated that she had a brother who had been convicted of incest in the same courtroom where Huskey's trial was being conducted and that she did not believe the evidence was strong enough to convict her brother. The State asked for the juror to be removed for cause, and the court granted the State's challenge. During the trial, the State presented evidence and testimony which included the testimony of N.H., S.F., N.H.'s father, and Detective Patton, and Huskey's defense presented evidence which included the testimony of Huskey and Edith. N.H. testified that she and Huskey had discussed sex at times and

---

[4] The charging information alleged that Huskey "attempted to perform deviate sexual conduct with N.H., . . . a child at least fourteen (14) years of age, but less than sixteen (16) year of age. To wit: Huskey attempted to place his fingers into N.H.'s vagina." Appellant's Appendix at 209.

[5] The charging information alleged that Huskey "touched or fondled N.H.'s breasts, . . . with intent to arouse or satisfy the sexual desires of either Huskey or N.H. At the time N.H. was a child at least fourteen (14) years of age, but less than sixteen (16) year of age. To wit: Huskey touched and fondled N.H.'s breasts with his hands and/or his mouth." Appellant's Appendix at 210.

4

more frequently when N.H. became older. N.H. testified that Huskey and Edith had previously obtained and paid for birth control for her, that Huskey was the first one that mentioned it, and that her father was against it. N.H. testified that, when Huskey moved his hand down to unbutton her pants, she "knew what he was going to do," and when asked what she believed Huskey was attempting to do, she testified "to finger me." Transcript at 244-245. The jury found Huskey guilty of the charged offenses under Cause No. 21.

After a hearing in Cause No. 37, the court revoked Huskey's probation and ordered that he serve his previously-suspended sentence of twenty years in the Indiana Department of Correction. Following a sentencing hearing in Cause No. 21, the court found no mitigating circumstances, found the aggravating circumstances to include Huskey's history of delinquent or criminal behavior, the fact that he has recently violated probation, and the fact that he was in a position having care, custody, or control of the victim at the time of the offense, and the court sentenced Huskey to fifteen years and ordered the sentence to be served consecutive to the reinstated sentence under Cause No. 37.

I.

The first issue is whether the court abused its discretion in removing a prospective juror for cause. Huskey argues that "[d]espite her experiences from her brother's trial, [the prospective juror] assured the court she was unbiased and could render a decision based on the evidence," that "[a]cknowledging it was a tough call, the court granted the State's strike for cause," that the juror "was not saying she would unfairly favor the

5

defendant" but that "[w]hat [she] was concerned with was that the State actually prove its's [sic] case beyond a reasonable doubt," and that "[t]his attitude is highly appropriate given the seriousness of a criminal case." Appellant's Brief at 8-10.

The State argues that the prospective juror's brother had been convicted of incest three years prior to Huskey's trial and in the same courtroom as Huskey's trial and that the juror disagreed with the result of her brother's case. The State argues that "[i]t therefore stands to reason that she likely harbored resentment against the prosecutor's office," that the juror's "statements as a whole show that she was disinclined to convict a defendant in a he-said, she-said type of case," that "[h]ad [the prospective juror] been seated on the jury, her voir dire responses and accompanying demeanor suggest that this case would have reminded her too much of her brother's trial for her to decide it dispassionately," and that "[a]lthough [the juror] said in general terms that she could follow the law and convict if the State proved its case, she never said that she could lay aside her specific views about the kind of proof she regarded as alone sufficient to meet the State's burden." Appellee's Brief at 12-14 (citations to record omitted). In his reply brief, Huskey argues that "[t]he State's argument is based on conjecture that because [the prospective juror's] brother had been convicted, [the juror] could not be fair or impartial in Huskey's case" and that "[t]his is contrary to [the juror's] testimony that she would not unfairly favor the defendant." Appellant's Reply Brief at 3.

Article 1, Section 13 of the Indiana Constitution guarantees criminal defendants the right to trial by an impartial jury. Lindsey v. State, 916 N.E.2d 230, 236 (Ind. Ct. App. 2009), trans. denied. Ind. Jury Rule 17(a) provides in part that "[t]he court shall

6

sustain a challenge for cause if the prospective juror: . . . (4) has formed or expressed an opinion about the outcome of the case, and is unable to set that opinion aside and render an impartial verdict based upon the law and the evidence; . . . [or] (8) is biased or prejudiced for or against a party to the case . . . ." The purpose of *voir dire* is to determine whether potential jurors can render a fair and impartial verdict in accordance with the law and evidence. Lindsey, 916 N.E.2d at 236. Such examination is used to discover whether a potential juror has any opinion, belief, or bias which would affect or control his determination of the issues to be tried, providing a basis to exercise the right of challenge either peremptory or for cause. Id. Whether a trial court should excuse a particular juror for cause rests within its sound discretion, and we will reverse the trial court only when its decision is illogical or arbitrary. Id. We afford substantial deference to trial judges regarding this decision because they see the jurors firsthand and are in a much better position to assess a juror's ability to serve without bias and reach a decision based on the law. Id. The trial judge is in the best position to assess the demeanor of prospective jurors. Pinkston v. State, 821 N.E.2d 830, 836 (Ind. Ct. App. 2004), trans. denied.

During *voir dire*, prospective juror D.S. revealed: "I had a brother who was accused of incest and was tried here in this courtroom. And I feel, he didn't have a jury trial. I felt, you know, that if he'd had a jury trial that he was a man that I still feel to this day that was innocent and went to prison." Transcript at 185. D.S. stated that "[a]nd I just strongly believe that, you know, that if there's not evidence to prove someone did something like this, you know, to detriment, to destroy their life . . . the life is basically

7

in[] your hands . . . ." Id. When asked whether she could see the State's reason for concern, D.S. stated: "I can see your . . . , yes, but for the defendant, I would think that would want someone that 'has been through it' and seen different . . . aspect of the law, different aspect of jury, different aspects of what we are putting the defendant through you know. It's, it's I wouldn't say that it's just a big difference." Id. at 186. The State asked if D.S. "would tend to side with the defense then," and D.S. responded:

> No, that's not true. If you have the evidence to prove that that person was guilty, then I would believe that that person is guilty. Uh, when my brother was tried, the evidence was not proven. It was a, there was no actual factual evidence and I just felt really bad that he went to prison regardless if there would have been one inkling of evidence that proved that what he was accused of was true, I would have even convicted my own brother, but the evidence was not there to convict him. It was, he say, she say and I just felt, you know, I still feel to this day that he's innocent. And I see what he's going through after he spent his time, what he's going through now. You know, and it's just, it just makes me a stronger person for . . . You know I'd like to be an advocate, advocate for the different individuals.

Id. at 186-187.

The State then asked D.S. if she "realize[d] that he say, she say is evidence," and D.S. responded that "It's evidence, but I think that there should be more proof that it is he said, she said," that "I don't think it should just solely go that, yes, this young girl is crying that he did this and the guy is saying, I didn't do it," and that "I just feel that . . . maybe there should have been, could have been and should be more consultation with other resources that are available to the State." Id. at 187. D.S. stated that "there's other resources out there, say . . . rape specialists and these kind of different people that are out there, they should be brought in and utilized . . . in cases." Id. at 188. D.S. stated "[a]nd no, I don't think I would be against the State of Indiana. I wouldn't be more for the

8

defendant. I would be . . . an honest person, you know." Id. D.S. stated that her brother's case had occurred three years ago.

The prosecutor challenged the seating of D.S. on the jury for cause because "she's too close to the last situation and she basically said that she can't render a verdict based upon two people saying different things like a he said, she said case." Id. at 199. Huskey's defense counsel disagreed and argued that D.S. made it very clear that she could be fair and impartial. The court stated "frankly from her demeanor and from what she said about the two conflicting views of just two witnesses, I have reservations about her," that "I just . . . don't think she's gonna be fair," and that D.S. "also said . . . there should be more than just him and her and there isn't any more than him and her in these cases," and the court granted the State's challenge for cause. Id. at 200-201.

Based upon the record, we cannot say the court's decision was illogical or arbitrary, and thus, excusing prospective juror D.S. for cause was not an abuse of discretion. See Pinkston, 821 N.E.2d at 837 (finding that a prospective juror's "comments could reasonably lead to the conclusion that the juror could not be fair to the State" and therefore rejecting the defendant's argument that the court's decision to exclude the juror was unwarranted).

II.

The next issue is whether Huskey's fifteen-year sentence under Cause No. 21 is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is

inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Huskey argues that "N.H. testified the breast touching was quick and [] Huskey stopped when she placed her hand on top of his before he did more than unbutton her pants" and that "[w]hile this is admittedly illegal behavior, the fact that this is a serious crime has already been taken into account by the legislature in making the offenses Class B and C Felonies." Appellant's Brief at 13. Huskey also argues that he "is an old man with many health problems," that "[h]e has been on social security disability for the last two years," that "[w]hile his crime is troubling, he did stop when N.H. asked him to do so," and "[h]e also complied with his son's request for him to go back to Florida to be away from N.H. following this incident." Id. at 14. Huskey requests that we revise his sentence to six years.

The State argues that Huskey's fifteen-year sentence is not inappropriate, that the nature of the offense "is that Huskey attempted to digitally penetrate N.H., his fourteen-year-old granddaughter" and that specific evidence that Huskey had the intent to "finger" N.H. is provided by the "conversation between Huskey and N.H. in which he suggested that she 'finger' herself before having sex," that "once they got inside the house, [] he unbuttoned her pants and put his hand inside her pants," and that "he told N.H. he wanted to know how 'loose' she was or 'how many fingers [she could] get.'" Appellee's Brief at 16. The State further argues that Huskey "does not challenge the trial court's finding that he was in a position having care, custody, or control of N.H. at the time of the offense."

10

Id. The State further asserts that Huskey's criminal history, evidence of uncharged misconduct, flight from authorities, and age and health do not support a finding that his sentence is inappropriate.

Our review of the nature of the offense reveals that, when Huskey was driving N.H. home, she told him that she was thinking about having sex and Huskey told her that she "needed to masturbate or . . . finger [her]self" and that "[t]hat way [she] don't get hurt when [she] have it." Transcript at 243. Once at N.H.'s home, Huskey kissed N.H. on the lips, "pulled down [N.H.'s] top and got [her] breast out" and "sucked on [her] nipple." Id. at 244. Huskey then moved his hand down to unbutton N.H.'s pants, and N.H. stopped him at that point. Huskey stated: "I just want to know how loose you are or how many fingers you can get." Id. N.H. testified that, when Huskey moved his hand down to unbutton her pants, she "knew what he was going to do" and that Huskey was attempting "to finger [her]." Id. at 244-245.

In addition, a warrant for Huskey's arrest was issued in October 2009. Law enforcement was unable to locate Huskey at the Florida residence on October 22, 2009. Between August 2009 and December 2010, Huskey moved between Florida, Kentucky, and Ohio. Huskey was eventually arrested in Ohio on December 28, 2010. When officers initially encountered Huskey, he "responded back that that was his brother." Id. at 371. The officers returned to the police station, obtained a photograph of Huskey, discovered that the individual they had spoken with at the residence was Huskey, and returned to the residence. After searching the residence, the officers discovered Huskey

11

"in the back yard, laying underneath the deck, at the rear of the residence, in-between . . . the swimming pool and the house, far up underneath face down." Id. at 373.

Our review of the character of the offender reveals that, according to the presentence investigation report (the "PSI"), Huskey was born on October 9, 1948, and his criminal history includes convictions for breaking and entering in Ohio in 1968 for which he was sentenced to thirty days in jail, criminal confinement as a class B felony in 1996 under Cause No. 37, and contributing to the unruliness or delinquency of a child as a first degree misdemeanor in Ohio in 2005. The PSI shows that he was charged with desertion in 1972 "for leaving the US Marines without permission" and that Huskey "stated he was AWOL from the Marines for approximately 3-4 years prior to being arrested and returned" and that he was later discharged and released. Appellant's Appendix at 255. The PSI further indicates that Huskey reported that he was receiving social security disability at the time of his arrest for his "medical conditions of COPD-third stage, severe arthritis and a heart valve problem" and that he advised he took medication for his arthritis, a heart medication, a blood thinner pill, and a pill for his prostrate issue, and that he used an inhaler. Id. at 258. The PSI also indicates that Huskey reported that he was committed to a community mental health center for a couple of months from a mental breakdown in 1995-1996 following "his attempt to try to get [a police officer] to shoot him" by inviting an officer "to his residence" and then stating that "he had a gun under a pillow and was going to shoot the officer." Id. at 259.

12

After due consideration, we conclude that Huskey has not sustained his burden of establishing that his aggregate sentence of fifteen years under Cause No. 21 is inappropriate in light of the nature of the offense and his character.

III.

The next issue is whether the court abused its discretion in ordering Huskey to serve the entirety of his previously-suspended sentence of twenty years under Cause No. 37 in the Indiana Department of Correction. Huskey argues that his "violation is serious (committing new offenses) and he isn't asking this Court to ignore the violation" and that "[r]ather, he points out he has already been punished severely with a fifteen-year sentence for the new offenses." Appellant's Brief at 16. Huskey argues that he is sixty-three years old and has some serious health concerns, including breathing problems and a leaky heart valve. Huskey argues that "[r]evocation of his entire sentence was not necessary to bring about his reform." Id. at 17.

The State argues that "Huskey does not point to any facts or circumstances that the trial court improperly failed to consider, nor does he claim that the court based its decision upon impermissible or unsupported reasons" and that "[t]hus, Huskey has not presented a cognizable claim that the trial court abused its discretion." Appellee's Brief at 20-21. The State further argues that "it was reasonable for the trial court to revoke all twenty years of Huskey's suspended sentence," that in 1996 the court "initially granted Huskey considerable leniency by suspending his entire sentence" under Cause No. 37, that in 2006 the court "continued that leniency in finding that his probation violation by committing a new criminal offense in Ohio did not warrant revocation," and that "[n]ow,

13

after a second new conviction for crimes committed in 2009, the court was well within its discretion to conclude that enough was enough and that the original suspension of the twenty-year sentence should no longer stand." Id. at 21.

Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Id. "Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." Id. "If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." Id. "Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard." Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id.

> Ind. Code § 35-38-2-3(g) governs the revocation of probation and provides:
> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> > (1)  Continue the person on probation, with or without modifying or enlarging the conditions.
> >
> > (2)  Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> >
> > (3)  Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

14

The record reveals that in 1996 Huskey pled guilty under Cause No. 37 to criminal confinement as a class B felony for removing his former wife from Indiana by force using a deadly weapon, and the court sentenced Huskey pursuant to a plea agreement to twenty years, all suspended to probation. In July 2005, a petition for probation violation hearing was filed alleging that Huskey committed a new criminal offense, namely, that Huskey committed the offense of contributing to the delinquency of a minor as a misdemeanor in Ohio. The court found that Huskey had violated his probation but did not order that Huskey serve any portion of his suspended sentence and continued probation. On May 20, 2010, the probation department filed a probation violation hearing based upon the charges against Huskey under Cause No. 21. Following Huskey's conviction under Cause No. 21, the court held a hearing in Cause No. 37 and ordered that Huskey serve the entirety of his previously-suspended sentence of twenty years in the Indiana Department of Correction.

Given Huskey's criminal history and probation violation, we cannot say that the court abused its discretion in ordering him to serve the entire portion or balance of his previously-suspended sentence. See Wilkerson v. State, 918 N.E.2d 458, 463-464 (Ind. Ct. App. 2009) (holding that the court did not abuse its discretion in ordering probationer to serve the entire balance of his previously-suspended sentence in the Department of Correction); Milliner v. State, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (holding that the trial court did not abuse its discretion in reinstating the probationer's entire previously-suspended sentence), trans. denied.

For the foregoing reasons, we affirm Huskey's convictions and sentence under Cause No. 21 and the court's order that he serve his previously-suspended sentence in the Department of Correction under Cause No. 37.

Affirmed.

BAKER, J., and KIRSCH, J., concur.