**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jun 10 2013, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAY RODIA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CAROL MILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-CR-523 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Annie Christ-Garcia, Judge
Cause No. 49F24-1109-FD-61953

**June 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Carol Miller ("Miller") was convicted after a jury trial of pointing a firearm[1] as a Class A misdemeanor. She appeals, raising the following restated issue for our review: whether the State presented sufficient evidence to disprove Miller's claim of self-defense.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In August 2011, Gregory Cox ("Cox") worked as a tow truck operator for A-Mass Towing, which had a contract with Hanover North, a subdivision in Marion County. Under the contract, A-Mass Towing would patrol for illegally parked vehicles in the subdivision. Vehicles could not be legally parked on the streets in the subdivision because the streets were too narrow, and parked vehicles could impede emergency vehicles. Cox would tag an illegally parked vehicle with a warning, but would not tag a vehicle more than once in a twenty-four-hour period. After a vehicle had been tagged twice, Cox would impound the illegally parked vehicle after observing a third violation.

On the night of August 30, 2011, Cox was patrolling Hanover North when he observed a blue Ford Explorer ("the Explorer") parked on the street and facing oncoming traffic. Cox could see where a tag had been removed from the front driver's side window of the Explorer. He then verified with a tag list and a call to his employer that the Explorer was still in violation for the same breach for which it had been previously tagged. Cox was wearing a blue uniform with reflective stripes and yellow borders, and his tow truck was marked with several company logos and was equipped with flashing

---

[1] *See* Ind. Code § 35-47-4-3.

safety lights. After verifying that the Explorer was still in violation for the same breach, Cox backed up to it to begin towing it.

Cox had the Explorer pulled approximately halfway up onto the bed of his tow truck when a neighbor knocked on the door of 2854 Ludwig Drive to alert the owner that the Explorer was being towed. Miller exited the home with a gun in a holster on her hip, and she asked Cox what was going on. Cox told her that the Explorer was being impounded and provided her with the location of the impound lot. Miller became agitated, and Cox explained to her that the Explorer had "already been tagged a couple times, it's being impounded, . . . I'm just the tow truck driver." *Tr.* at 21. Because he had observed Miller's firearm, Cox attempted to put some distance between himself and Miller by walking to the other side of his truck. Miller followed him around his truck and became more agitated when she realized that Cox was not going to release the Explorer back to her at that time. Cox walked behind the Explorer, and Miller said, "no, no, you're not going to tow my vehicle." *Id.* at 22. She then pulled her firearm out of its holster, "racked" it (meaning she released the safety and pulled the slide back to load a round into the chamber of the weapon) and pointed it at Cox from a distance of six to eight feet. When Cox heard the sound of Miller racking her firearm, he immediately began to turn away from her, put his hands in the air, and said, "okay, okay, no problem I'll put [the Explorer] down, not a problem." *Id.* at 24. Cox was trained to try to calm people down when they became angry with him while performing his job. Cox did not approach Miller at any point during their interaction. Miller then looked like she was

putting her firearm back into the holster, but then raised it again and said, "I'm serious now." *Id*. at 25.

Cox walked around the front of his truck to put distance between Miller and himself. When he had made sure there was sufficient distance between them, he called 911 to report the altercation and that it involved a gun. Cox waited in his truck and then in a neighbor's driveway until the police arrived. When the police arrived, Miller was located in the driver's seat of the Explorer, which was still halfway onto the tow truck. Police officers asked Miller to show her hands, but she did not comply until after several requests were made. Officers secured Miller's firearm, which was still loaded and contained a round in the chamber.

The State charged Miller with pointing a firearm as a Class D felony. A jury trial was held, and at the conclusion of the trial, the jury found Miller guilty as charged. The trial court entered judgment as a Class A misdemeanor and sentenced Miller to 365 days, with 351 days suspended to probation and fourteen days executed, all of which was credited as time served. Miller now appeals.

## DISCUSSION AND DECISION

Miller argues that the State failed to present sufficient evidence to rebut her claim of self-defense. We review a challenge to the sufficiency of the evidence to rebut a claim of self-defense using the same standard as for any claim of insufficient evidence. *Pinkston v. State*, 821 N.E.2d 830, 841 (Ind. Ct. App. 2004) (citing *Wilson v. State,* 770 N.E.2d 799, 801 (Ind. 2002)), *trans. denied*. We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of probative value to

4

support the conclusion of the trier-of-fact, then the verdict will not be disturbed. *Id.* at 841-42.

Miller contends that she presented a valid claim of self-defense, which was not rebutted by the State. She claims that there was insufficient evidence presented for the jury to find beyond a reasonable doubt that the State had disproved her self-defense claim. Specifically, Miller alleges that the evidence showed that, when she went outside to determine what was happening with her vehicle, she became fearful when, Cox, who was a large man, "stood on the balls of his feet, with his chest puffed out and moved toward her." *Appellant's Br.* at 10. This was why she unholstered her weapon and pointed it at Cox. She further asserts that she put her weapon back in the holster as soon as she no longer viewed Cox as a threat.

We note that a valid claim of self-defense is a legal justification for an act that is otherwise defined as "criminal." *Pinkston*, 821 N.E.2d at 842. To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Id.* (citing *Wilson,* 770 N.E.2d at 800). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* The State may satisfy its burden by either rebutting the defense directly or relying on the sufficiency of evidence in its case-in-chief. *Id.* (citing *Butler v. State,* 547 N.E.2d 270, 271 (Ind.1989)).

Here, the evidence most favorable to the verdict showed that, as Cox was performing his job of impounding vehicles that were in violation of the parking policy of

5

Hanover North, which he was authorized to do under a contract between his employer and the subdivision, he was confronted by Miller. Cox testified that, at no point, did he ever move toward Miller during their interaction. *Tr*. at 43-44. Instead, he stated that he observed Miller's holstered forearm immediately, and attempted to distance himself from her. *Id*. at 20-22. When Miller realized that Cox was not going to release the Explorer, she told Cox, "no, no, you're not going to tow my vehicle" and pointed her firearm at Cox. *Id*. at 22. The jury could have reasonably inferred from this evidence that Miller became angry with Cox, who was merely doing his job by impounding the Explorer, and pointed her firearm at him to compel him to stop.

Miller's entire argument is merely a request for this court to reweigh the evidence and to judge the credibility of the witnesses by finding her to be more credible than Cox, which we cannot do. *Pinkston v. State*, 821 N.E.2d at 841. We conclude that the State presented sufficient evidence to rebut Miller's claim of self-defense as the evidence presented showed that Miller was not in fear that Cox would harm her, but was merely angry that he was towing the Explorer. The evidence was therefore sufficient for the jury to find beyond a reasonable doubt that the State rebutted Miller's claim of self-defense and to support her conviction for pointing a firearm.

Affirmed.

VAIDIK, J., and PYLE, J., concur.