## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory Smith,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 16, 2018

Court of Appeals Case No.
49A02-1709-CR-2031

Appeal from the Marion Superior Court

The Honorable Sheila Carlisle, Judge
The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-1606-MR-24373

**Barnes, Judge.**

# Case Summary

[1] Gregory Smith appeals his conviction for murder. We affirm.

# Issue

[2] The sole issue before us is whether there is sufficient evidence to sustain Smith's conviction.

# Facts

[3] At 10:47 p.m. on June 21, 2016, Smith called 911 and reported that he had come home to find Eric Bonds unresponsive on the floor. Smith and Bonds were in a romantic relationship and were living together. When Smith came home, Bonds was wearing only his underwear and was already dead. Police officers were dispatched to their apartment at 10:51 p.m. When the officers arrived on the scene, they found a large amount of blood throughout the apartment, including on the couch, floor, walls, door, in the kitchen, and in the hallway outside the apartment. There were numerous signs of a struggle in the apartment; appliances, a microwave, and silverware were on the floor in the kitchen, and cushions in the living room were in disarray. The officers asked Smith to step out of the apartment and observed what appeared to be blood on his shirt. Officers conducted an extensive search of the apartment as well as the area around the apartment but did not find the murder weapon.

[4]     Smith was taken to the police station, placed in an interrogation room, and questioned about the incident. Smith spoke to officers numerous times, providing conflicting and inconsistent accounts in these various statements. Initially, Smith told officers that he and Bonds argued around 3:00 p.m., that the argument did not become physical, and that he left the apartment after the argument. At another point, Smith claimed that the argument with Bonds did become physical but that there was no knife involved in the fight. In Smith's final account to the officers, he claimed that Bonds attacked him with a knife, that he pulled Bonds' arms down to his sides while he was holding the knife, and that he may have stabbed Bonds at that time.

[5]     Neighbors in the apartments below testified to hearing a loud crash or thud sound as though someone had fallen or dropped a heavy object, and sounds of someone moving things around in the apartment. One of the neighbors opened his apartment door after hearing the loud noises, and saw Smith walking down the stairs and out of the building carrying something.

[6]     Bonds died of a stab wound to the left side of his chest. The injury extended three to three-and-one-half inches into Bonds' body, fracturing the rib, puncturing the lung, and perforating the left ventricle of Bonds' heart. Dr. Darin Wolfe, a forensic pathologist, testified that this severe injury would have caused Bonds to lose blood every time his heart beat. Dr. Wolfe also testified that death would likely result in about five or ten minutes, and that a person of slight stature, like Bonds, would enter shock faster than a larger person because they have a lower blood volume to lose. Dr. Wolfe further testified that this

injury "would be difficult to survive, even if you were standing there with a thoracic surgeon next to you." Tr. Vol. II p. 12. It would have required significant force to cause this injury. Bonds had injuries consistent with a struggle, including scratches to the left side of his face and neck, and on the side of his hands. Bonds also had a large, deep abrasion on the back of his fingers on his left hand. Smith had a cut on his hand consistent with his hand slipping onto the blade of a knife, and a bite mark on his chest.

[7] The State charged Smith with murder, and he elected to have a bench trial. At trial, Smith again claimed that he pulled Bonds' arms down to his side while Bonds had the knife, but he testified that he did not stab Bonds. Smith claimed that, after placing Bonds' hands at his side, he left the apartment while Bonds was standing, alive, and not bleeding. Smith also claimed that he did not take the knife with him and that Bonds had the knife when he left. Smith further claimed that the apartment was not covered in blood when he left and that he returned to find Bonds dead and the apartment covered in blood. Smith argued that he acted in self-defense. The trial court questioned Smith's credibility. After reviewing the evidence, the trial court found Smith guilty of murder. Smith now appeals his conviction.

## Analysis

[8] Smith claims there is insufficient evidence to sustain his conviction for murder and that the State failed to rebut his self-defense claim. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v.*

*State*, 770 N.E.2d 799, 801 (Ind. 2002). When analyzing a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the judgment. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). "It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* The evidence does not have to overcome every reasonable hypothesis of innocence, and it is sufficient if an inference may reasonably be drawn to support the conviction. *Id.*

[9] A valid claim of self-defense is legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person: (1) is justified in using deadly force; and (2) does not have a duty to retreat; if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary." Ind. Code § 35-41-3-2(c). To prevail on a self-defense claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) acted without fault; and (3) was in reasonable fear or apprehension of bodily harm. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Wilson*

*v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). "If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson*, 770 N.E.2d at 800-01.

[10] Smith argues that the State failed to negate his self-defense argument and that the evidence at trial was not sufficient to sustain the burden of proof. According to Smith, Bonds was the initial aggressor. Smith claimed that Bonds had tackled him, struck him with the microwave, and came after him with a knife. However, the State presented evidence that Smith not only had blood on his shirt when officers arrived, but Smith also changed his story multiple times to officers and even at trial. As of the time of trial, Smith claimed that he pulled Bonds' arms down to his side while Bonds had the knife, but claimed that he did not stab Bonds. Smith and Bonds' neighbors testified to hearing a loud crash or thud sound on the night in question. Following the loud noise, one of the neighbors saw Smith walking down the stairs and out of the building carrying something. Smith claimed that Bonds had the knife when Smith left the apartment, but officers were unable to locate the murder weapon.

[11] Bonds died of a stab wound to the left side of his chest. Dr. Wolfe testified that it would have required significant force to cause Bonds' injury. This court has held that "[t]he amount of force that an individual may use to protect himself

must be proportionate to the urgency of the situation." *Pinkston v. State*, 821 N.E.2d 830, 842 (Ind. Ct. App. 2004), *trans. denied*. "When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished." *Id.* Smith's injuries, conduct, and the amount of force used on Bonds was not that of someone acting in self-defense, but in fact was that of someone acting with intent to kill without justification. At the time of trial, Smith had changed his story once again, claiming that he did not stab Bonds, and that Bonds was standing, alive, and not bleeding when he left the apartment. This testimony was wholly inconsistent with a claim of self-defense. The State presented sufficient evidence to rebut Smith's self-defense claim.

# Conclusion

[12] There is sufficient evidence to sustain Smith's conviction for murder. We affirm.

Affirmed.

Najam, J., and Mathias, J., concur.